673 F.2d 1020
 64 A.L.R.Fed. 415, 1982-1 Trade Cases 64,515
 In re CEMENT ANTITRUST LITIGATION (MDL NO. 296).
STATE OF ARIZONA, et al., Plaintiffs-Appellants,
v.
IDEAL BASIC INDUSTRIES, et al., Defendants-Appellees.
STATE OF ARIZONA, et al., Petitioners,
v.
UNITED STATES DISTRICT COURT FOR the DISTRICT OF ARIZONA, Respondent,
and
Kaiser Cement and Gypsum Corporation, et al., Real Parties
in Interest.
STATE OF ARIZONA, et al., Petitioners,
v.
ASH GROVE CEMENT COMPANY, et al., Respondents.
 Nos. 81-5481, 81-7465 and 81-8079.
 United States Court of Appeals,
Ninth Circuit.
 Order filed Oct. 30, 1981.
Opinion filed Jan. 27, 1982.
As Amended on Denial of Rehearing and Rehearing En Banc
April 15, 1982.
 
 Before WALLACE, SKOPIL, and BOOCHEVER, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Plaintiffs, appellants and petitioners herein, seek review of the district court's order of May 26, 1981, granting a motion to recuse brought by defendants, appellees and real parties herein. Three avenues are attempted: a direct appeal under 28 U.S.C. § 1291, a discretionary interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and a petition for a writ of mandamus. Defendants move to dismiss the appeal on the ground that a grant of a motion to recuse is not a final appealable order subject to review under 28 U.S.C. § 1291, and argue that an interlocutory appeal under section 1292(b) is not warranted. We dismiss the appeal for lack of jurisdiction and deny the petition for permission to appeal pursuant to section 1292(b). Review will be based upon the petition for mandamus.
 
 
 2
 * Plaintiffs, a national class of public and private purchasers of cement and cement-containing products, and two statewide classes of governmental purchasers, assert a nationwide conspiracy among various cement producers to fix, maintain and stabilize the price of cement and cement products in violation of, inter alia, Section 1 of the Sherman Act, 15 U.S.C. § 1. The original suit was filed in the District of Arizona in 1976. Similar actions, which were filed in other parts of the country, were thereafter transferred by the Judicial Panel on Multi-District Litigation to the District of Arizona for consolidated pretrial proceedings. Because of his experience with the pretrial proceedings that had already been conducted in the actions pending in the District of Arizona, Judge Muecke was assigned to hear the coordinated or consolidated pretrial proceedings. In re Cement and Concrete Antitrust Litigation, 437 F.Supp. 750, 753 (Jud.Pan.Mult.Lit.1977).
 
 
 3
 On March 9, 1979, Judge Muecke certified that the litigation proceed on behalf of a nationwide class of public and private cement purchasers and two statewide governmental entity classes. Following certification of these classes, the parties lodged with the court a Master Class List of 210,235 entities, consisting of all putative class members who could be ascertained through reasonable efforts. On January 12, 1981, after Judge Muecke had approved the list and had given notice to the putative class members, pursuant to Fed.R.Civ.P. 23(c)(2), that they could elect exclusion from the class by written request prior to December 31, 1980, defendants informed Judge Muecke in a letter that a comparison of his 1980 financial disclosure statement with the Master Class List indicated that his wife owned stock in seven of the 210,235 entities, none of which had requested exclusion. Defendants asserted that such stock ownership constituted interests both in parties to the litigation and in the subject matter of the litigation, thereby mandating Judge Muecke's recusal under 28 U.S.C. § 455(b)(4).[1] On February 23, 1981, defendants filed a motion for Judge Muecke's disqualification on the grounds asserted in their previous letter. Judge Muecke granted defendants' motion to recuse on the basis that his wife's stock ownership fell within the per se rule of 28 U.S.C. § 455(b)(4), which requires recusal when a judge's spouse has a financial interest in a party to the proceeding. In re Cement and Concrete Antitrust Litigation, 515 F.Supp. 1076 (D.Ariz.1981).[2] On June 3, 1981, Judge Muecke certified his order for an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).
 
 II
 
 4
 The first question we must decide is whether a party may take an appeal, pursuant to 28 U.S.C. § 1291, from an order granting a motion to recuse. Under section 1291, the courts of appeals are vested with "jurisdiction of appeals from all final decisions of the district courts...." The Supreme Court has consistently interpreted this language as indicating that a party may not take an appeal under this section until there has been a decision by the district court that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (Coopers & Lybrand ), quoting Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). An order granting a motion to recuse clearly does not terminate the entire litigation.[3] "Such an order is appealable, therefore, only if it comes within an appropriate exception to the final-judgment rule." Coopers & Lybrand, supra, 437 U.S. at 467, 98 S.Ct. at 2457. In this case, plaintiffs rely on the "collateral order" exception articulated by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (Cohen).
 
 
 5
 In Cohen the Supreme Court recognized that some orders by their nature require review at an earlier stage, because they will be effectively unreviewable upon appeal from a final judgment. Id. at 546, 69 S.Ct. at 1225. The Cohen collateral order doctrine allows appeals from orders that can be said to fall within
 
 
 6
 that small class which finally determine claims of rights separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.
 
 
 7
 Id. Although there is a strong policy behind the rule that appeals are to be made only following final judgment on the merits, the Court has recognized that under certain circumstances "a rigid insistence on technical finality would sometimes conflict with the purposes of the statute." Coopers & Lybrand, supra, 437 U.S. at 471, 98 S.Ct. at 2459. Recently, the Court summarized the Cohen standard in the following manner:
 
 
 8
 "(T)he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."
 
 
 9
 Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 375, 101 S.Ct. 669, 674, 66 L.Ed.2d 571 (1981), quoting Coopers & Lybrand, supra, 437 U.S. at 468, 98 S.Ct. at 2457.
 
 
 10
 Firestone also stressed that the Cohen exception is narrow and teaches that "interlocutory orders are not appealable 'on the mere ground that they may be erroneous.' " 449 U.S. at 378, 101 S.Ct. at 675. Thus, in determining whether a district court's order granting a motion to recuse is appealable prior to final judgment, we must be aware not only of the practical effect of denying immediate review upon a particular party, but also of the potential "unjustified waste of scarce judicial resources" which can result if the limited exception carved out in Cohen is transformed "into a license for broad disregard of the finality rule imposed by Congress in § 1291." Id. at 378, 101 S.Ct. at 676.
 
 
 11
 Plaintiffs argue that an order granting recusal is appealable under Cohen. Applying the standard as summarized by the Court in Firestone, id. at 375, 101 S.Ct. at 674, we cannot disagree that an order granting recusal conclusively determines a disputed question, completely separate from the merits of the action, which, if not reviewed immediately, will be effectively unreviewable on appeal from final judgment. Cf. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 658 F.2d 1355 (9th Cir. 1981) (allowing appeal from order disqualifying counsel under Cohen). However, not all orders which meet the requirements of this standard are reviewable under section 1291. The Court in Cohen spoke of that small class of orders which finally determine "claims of right." More recently the Court has explained that in the situations in which Cohen has been applied, "each involved an asserted right the legal and practical value of which could be destroyed if it were not vindicated before trial." United States v. MacDonald, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552, 56 L.Ed.2d 18 (1978) (footnote omitted). Thus, criminal defendants have been permitted appeals prior to criminal trials when they claim a violation of the double jeopardy clause, Abney v. United States, 431 U.S. 651, 662, 97 S.Ct. 2034, 2041, 52 L.Ed.2d 651 (1977), or a violation of their statutory and constitutional right to bail, Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951). In these situations, like the posting of security for costs involved in Cohen, the party seeking immediate review can establish not only that the district court's order is effectively unreviewable on appeal, but also that the effect of an erroneous decision by the district court will deprive him of some protectable interest. See Firestone Tire & Rubber Co. v. Risjord, supra, 449 U.S. at 376-77, 101 S.Ct. at 674-675. The rights sought to be vindicated by an immediate appeal would be extinguished by the time a final judgment is entered. Since the Supreme Court has recently cautioned that the final judgment rule and the important policies which support it must not be eroded by an unnecessarily liberal application of the Cohen exception, we are convinced that the "claim of right" language used in Cohen and reiterated by the Court on subsequent occasions must be viewed as establishing a mandatory prerequisite for a Cohen collateral order. See Community Broadcasting of Boston, Inc. v. FCC, 546 F.2d 1022, 1028 (D.C.Cir.1976). It is this threshold requirement that plaintiffs in the present case have failed to meet.
 
 
 12
 In Hampton v. City of Chicago, 643 F.2d 478 (7th Cir. 1981), the Seventh Circuit considered the question of whether the erroneous grant of a motion to recuse deprives the litigant opposing the motion of any recognizable interest. In holding that it did not, the court stated: "(W)e fail to conceive of any interest which the plaintiffs have as litigants for review of (the) recusal order.... While plaintiffs have a right to have their claim heard by the district court, they have no protectable interest in the continued exercise of jurisdiction by a particular judge." Id. at 479. We agree.
 
 
 13
 Plaintiffs attempt to distinguish Hampton on two grounds. First, they argue that Judge Muecke's decision prevents any other federal judge from being assigned to hear the case and therefore denies them the right to have their case heard at all. In Hampton, reassignment of the case was routinely made by the clerk's office on a random basis. In contrast, reassignment of the instant case requires a concurrence of four of the seven judges on the Judicial Panel of Multi-District Litigation. Plaintiffs claim that because five of the seven members of the Panel own stock in putative class members, the Panel cannot act to assign the cases to a new judge or remand them to the districts where they were originally filed. Even the court in Hampton suggested that a consequence such as that asserted by plaintiffs might satisfy the "claim of right" requirement of Cohen. Id. at 479 & n.2.
 
 
 14
 We need not decide this question since we opine that stock ownership in putative class members by judges on the Judicial Panel on Multi-District Litigation does not affect the Panel's ability to transfer the present proceedings to a new judge. 28 U.S.C. § 455(b)(4) requires only that a judge disqualify himself in any "proceeding" where he has a financial interest in the subject matter in controversy or in a party to that proceeding. Section 455(d)(1) defines the word "proceeding" as including "pretrial, trial, appellate review, or other stages of litigation." 28 U.S.C. § 455(d)(1). Although the reassignment by the Panel could be construed as a pretrial stage of litigation, in light of the obvious purpose of section 455 to prevent a judge from adjudicating rights in any case in which he appears to have an interest, we refuse to construe the word "proceeding" to include the performance of ministerial duties such as assigning a case to another judge. See Stringer v. United States, 233 F.2d 947, 948 (9th Cir. 1956). While the issue may be ultimately decided if and when the question is presented directly to the Panel, we conclude that the contention is of insufficient merit to persuade us that plaintiffs' fear of never having their case heard is well founded.
 
 
 15
 Plaintiffs also assert that the present case differs from Hampton because of Judge Muecke's four-year experience with the litigation. In Hampton the recusal order came immediately after the judge was assigned to the case and before he had gained substantial experience with the litigation or made any substantive orders. Hampton v. City of Chicago, supra, 643 F.2d at 479-80. Judge Muecke, on the other hand, had made numerous pretrial orders and secured a working knowledge of the suit during his four-year tenure. Plaintiffs essentially argue that although a litigant does not have a right to have a particular judge hear his case, a litigant does have a protectable interest in not having a judge disqualify himself unnecessarily when a recusal order would so disrupt the course of the litigation as to cause substantial delay. However, plaintiffs have failed to demonstrate how Judge Muecke's recusal would substantially delay the present litigation. Plaintiffs merely speculate that because the pretrial proceedings have taken over five years, the time required for a new judge to familiarize himself with the case will be substantial and thus deny them their right to a speedy and inexpensive adjudication of their claims. While plaintiffs' assessment of Judge Muecke's effective service should not be minimized, we should not rule out the possibility that the next judge selected by the Multi-District Panel may be even more familiar with the substantive issues of the litigation, which are as yet essentially undecided, or be aware of different pretrial or trial techniques. Thus, the ultimate disposition of this case may not be appreciably delayed at all.
 
 
 16
 There is another, more fundamental reason that we cannot accept plaintiffs' argument. There may well be exceptional situations in which the costs of familiarizing a new judge, in terms of delay, will prove to be very great. However, there will also be situations in which, although the original judge's participation greatly exceeds that of the judge in Hampton, the effect of recusal on the course of litigation will be nonexistent or insignificant. It is not necessary to create a general rule permitting immediate appeal of all recusal decisions in order to resolve the exceptional situations. See Firestone Tire & Rubber Co. v. Risjord, supra, 449 U.S. at 378 n.13, 101 S.Ct. at 676 n.13. Ultimately, if dissatisfied with the district judge's decision and confident that the litigation will be greatly disrupted, a party may seek a writ of mandamus from the court of appeals. It is for just such an exceptional circumstance that the writ was designed. See Community Broadcasting of Boston, Inc. v. FCC, supra, 546 F.2d at 1028. Plaintiffs have done so here and that petition will be reviewed on the merits.
 
 III
 
 17
 Plaintiffs have also applied to us for permission to appeal the district court's order pursuant to 28 U.S.C. § 1292(b).[4] Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals. Whether an order of judicial recusal is properly appealable under section 1292(b) is a question of first impression in our circuit. Our analysis must begin by examining the statute and its legislative history.
 
 
 18
 When a party seeks a section 1292(b) interlocutory appeal, the court of appeals must undertake a two-step analysis. First, we must determine whether the district court has properly found that the certification requirements of the statute have been met. These certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation. If we conclude that the requirements have been met, we may, but need not, exercise jurisdiction. The second step in our analysis is therefore to decide whether, in the exercise of the discretion granted us by the statute, we want to accept jurisdiction. In the present case, it is not necessary to discuss how this second determination is made, as we have concluded that the question whether 28 U.S.C. § 455(b)(4) compels Judge Muecke's disqualification is not a "controlling question of law," and therefore the jurisdictional prerequisites for section 1292(b) review have not been met.
 
 
 19
 While Congress did not specifically define what it meant by "controlling," the legislative history of 1292(b) indicates that this section was to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation. United States Rubber Co. v. Wright, 359 F.2d 784, 785 (9th Cir. 1966) (per curiam); Milbert v. Bison Laboratories, 260 F.2d 431, 433-35 (3d Cir. 1958). Although some circuits have criticized such a narrow approach to interlocutory appeals, see, e.g., Hadjipateras v. Pacifica, S.A., 290 F.2d 697, 702-03 (5th Cir. 1961), recently the Supreme Court in Coopers & Lybrand indicated its approval of the "exceptional circumstances" standard of section 1292(b) when it stated that the appellant "still has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." Coopers & Lybrand, supra, 437 U.S. at 475, 98 S.Ct. at 2461, quoting Fisons, Ltd. v. United States, 458 F.2d 1241, 1248 (7th Cir.), cert. denied, 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 581 (1972).
 
 
 20
 Keeping in mind this "exceptional circumstances" standard, we now must decide what Congress meant by the expression "controlling question of law." Courts have refused to interpret the phrase so narrowly as to require that reversal of the district court's order terminate the litigation. See, e.g., United States v. Woodbury, 263 F.2d 784, 787 (9th Cir. 1959). One court has stated that, at the very least, a controlling question of law must encompass "every order which, if erroneous, would be reversible error on final appeal." Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974). However, this latter standard is of little guidance in the present case since the erroneous granting of a motion to recuse could not constitute reversible error upon a final appeal. Quite to the contrary, after the litigation has been tried before an impartial judge, the recusal order of the former judge is effectively mooted.
 
 
 21
 Just because an erroneous recusal order would not constitute reversible error on final appeal does not preclude it from review under section 1292(b). Rather, all that must be shown in order for a question to be "controlling" is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court. See United States Rubber Co. v. Wright, supra, 359 F.2d at 785. In discussing the "controlling question of law" requirement in United States v. Woodbury, we stated:
 
 
 22
 In our view the question of privilege which the government now would have us review involves nothing as fundamental as the determination of who are necessary and proper parties, whether a court to which a cause has been transferred has jurisdiction, or whether state or federal law should be applied.
 
 
 23
 The issues of this lawsuit and the ability of the court to render a binding decision therein are in no way affected by the order to produce documents....
 
 
 24
 ....
 
 
 25
 In our opinion the claim of privilege here asserted is collateral to the basic issues of this case, and cannot be regarded as presenting a "controlling question of law" as those words are used in the statute.
 
 
 26
 263 F.2d at 787-88 (emphasis added). The question whether Judge Muecke erroneously disqualified himself under 28 U.S.C. § 455(b)(4) must be viewed as collateral to the basic issues of this lawsuit.
 
 
 27
 Furthermore, Judge Muecke's recusal order will neither affect the ability of the district court to render a binding decision nor materially affect the outcome of the litigation in the district court. At best, all that can be said is that if the recusal decision was erroneous and can be overturned immediately upon appeal, some time at the district court level may ultimately be saved. This assumes, of course, that it would take less time for the parties to appeal the recusal order than it would to familiarize a new judge with the litigation. If so, that would not materially affect the outcome of this litigation, but only its duration. Some courts have adopted the view that a question is controlling if it is one the resolution of which may appreciably shorten the time, effort, or expense of conducting a lawsuit, see Katz v. Carte Blanche Corp., supra, 496 F.2d at 755-56; Hadjipateras v. Pacifica, S.A., supra, 290 F.2d at 702; E. F. Hutton & Co. v. Brown, 305 F.Supp. 371, 403 (S.D.Tex.1969), thus essentially reading the "controlling question of law" requirement out of section 1292(b). We reject this approach. Congress could easily have chosen only to require that a question materially advance the litigation in order for it to be immediately reviewable. Since Congress chose to add the additional requirement that the issue for which review is sought must be a "controlling question of law," it would be improper for us to construe the statute as though these two requirements were interchangeable.
 
 
 28
 In conclusion, it is difficult for us to think of a question which is more separable from and collateral to the merits of this lawsuit than is the question of Judge Muecke's recusal decision.[5] Since an appellate decision that recusal was improper could in no way materially affect the eventual outcome of the litigation, we cannot view the question as controlling. The precedent in this circuit has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases, and that the "controlling question of law" requirement be interpreted in such a way to implement this policy. See, e.g., Robbins Co. v. Lawrence Mfg. Co., 482 F.2d 426, 429 (9th Cir. 1973); United States Rubber Co. v. Wright, supra, 359 F.2d at 785. Such precedent prohibits us from disregarding the "controlling question of law" requirement in the statute despite the fact that judicial resources might be saved by doing so. We admit that our adherence to precedent may mean that the important question of the applicability of 28 U.S.C. § 455(b) (4) to class actions will not be subject to direct appellate review, at least in the case where the district court grants the motion to recuse, and will require the parties to challenge the decision, as was done here, by a petition for writ of mandamus. However, Congress must have been aware of this possibility when it enacted the per se stock ownership rules of 28 U.S.C. § 455(b)(4). It is for Congress to decide whether this question is so important that direct appellate review must always be available.
 
 
 29
 APPEAL DISMISSED; PETITION TO APPEAL INTERLOCUTORY ORDER DENIED; PETITION FOR WRIT OF MANDAMUS TO BE HEARD ON THE MERITS.
 
 BOOCHEVER, Circuit Judge, dissenting:
 
 30
 I respectfully dissent. I think that Judge Muecke properly certified his recusal order, pursuant to 28 U.S.C. § 1292(b), and that we should have accepted the interlocutory appeal. In addition, I think that an appeal pursuant to the "collateral order" exception to the final judgment rule, see Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), would have been proper. The gist of the majority's opinion is that exercising jurisdiction over this interlocutory appeal would be improper because (1) Judge Muecke's recusal order does not present a "controlling question of law" and (2) plaintiffs assert no "claim of right" as required by Cohen. I find neither of these arguments convincing.
 
 
 31
 The majority states the issue before us too broadly, and, in doing so, confounds the application of both section 1292(b) and the collateral order doctrine. Stating the issue too broadly causes the majority to overstate the risk of rampant interlocutory appeals. As I see it, the issue is not whether all judicial recusals are open to interlocutory appeal. The issue is much narrower: is a judicial recusal order appealable either under section 1292(b) or Cohen when (1) it arises in a complex class action suit, (2) the judge bases his order upon a technical and literal reading of 28 U.S.C. § 455 even though he finds that he would neither be influenced by his spouse's minor stockholdings nor create the impression of impropriety by hearing the case, and (3) the judge recuses himself after presiding over the case for several years under circumstances requiring a new judge to expend substantial time and effort to become familiar with the case? I answer this question in the affirmative.
 
 A. Section 1292(b)
 
 32
 We must conduct a two-step analysis when a party seeks a section 1292(b) appeal from a certified order. We must first determine whether the order certified for appeal meets the statute's threefold certification requirements.[1] If we find the order certifiable, we must then decide whether we want to accept jurisdiction. The majority concludes that Judge Muecke erred in certifying his recusal order because the recusal issue was not a "controlling question of law;" it, therefore, never reaches the second step of the analysis. I disagree with the majority's reasoning, and believe that we should accept jurisdiction.
 
 
 33
 Judge Muecke's recusal order meets all of section 1292(b)'s certification requirements. Two are clearly satisfied. First, an immediate appeal from Judge Muecke's recusal order might materially advance the ultimate termination of this litigation. Judge Muecke has warned of the delay he foresees if another judge is required to preside over this litigation. Second, this appeal involves an issue over which reasonable judges might differ. As Judge Muecke suggests, Congress may not have contemplated the application of 28 U.S.C. § 455 to class action litigation. This uncertainty provides a credible basis for a difference of opinion regarding section 455's applicability to class action suits.
 
 
 34
 Finally, I think the certified recusal order presents a "controlling question of law." Judge Muecke's recusal order presents a question of law; whether that question is "controlling" is the difficult issue. Because Congress did not explain what it meant by "controlling," we must construe that requirement in light of congressional purposes underlying section 1292(b)'s adoption-saving time for the district court and for the litigants while protecting against undue proliferation of appeals. See Katz v. Carte Blanche Corp., 496 F.2d 747, 755 (3d Cir.) (en banc), cert. denied, 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974); Hadjipateras v. Pacifica, S.A., 290 F.2d 697, 702-03 (5th Cir. 1961). The Third Circuit found testimony in section 1292(b)'s legislative history indicating that " 'controlling' means serious to the conduct of the litigation, either practically or legally." Katz, 496 F.2d at 755. The Second Circuit has remarked that "controlling questions of law" may include "procedural determination(s) that may importantly affect the conduct of an action." In re Duplan Corp., 591 F.2d 139, 148 n.11 (2d Cir. 1978) (Friendly, J.). Several commentators have adopted similar interpretations. See Note, Interlocutory Appeals in the Federal Courts under 28 U.S.C. § 1292(b), 88 Harv.L.Rev. 607, 623 (1975); 16 C. Wright & A. Miller, Federal Practice and Procedure § 3930, at 169; 9 Moore, Federal Practice, P 110.22(2), at 260 (2d ed. 1975) ("The critical requirement is that it (the question) have the potential for substantially accelerating the disposition of the litigation."). I agree with these interpretations of the "controlling question" requirement. So defined, it is abundantly clear that this case presents a "controlling question of law."
 
 
 35
 There can be no doubt but that Judge Muecke's recusal order would importantly affect the conduct of this action. During the five years he presided over this case, Judge Muecke devoted numerous hours to pleadings, hearings, and other procedural matters. He has made numerous decisions that have affected the scope and character of the suit. He shares an intimacy with this litigation that would take another judge much time and effort to acquire. He warns of the delay and injustice that will occur if another judge is required to familiarize himself with this case:
 
 
 36
 To transfer five and one-half years of work and paper to a new judge seems unfair, not only to the parties, but to the unlucky transferee and will in all likelihood be the occasion for delay. Decisions which might routinely be disposed of by me may well take a new judge longer until he has the opportunity to become acquainted with the case.
 
 
 37
 In re Cement and Concrete Antitrust Litigation, 515 F.Supp. 1077, 1081 (D.Ariz.1981). We should not take these admonitions lightly, as Judge Muecke is in a far better position than we to evaluate the probability and effects of delay. With this in mind, I would hold that Judge Muecke did not err in certifying his recusal order for section 1292(b) review.
 
 
 38
 Finding us empowered to assert jurisdiction over this appeal, I would then rule that we should hear its merits. In exercising our discretion to accept or reject certified orders for interlocutory appeal, we must be guided by the policies and concerns that motivated Congress to adopt section 1292(b). Congress intended to create a mechanism that would shorten the period between the commencement of an action and its ultimate termination and would avert unnecessary work and expense. See Appeals from Interlocutory Orders and Confinement in Jail-Type Institutions: Hearings on H.R. 6238 and H.R. 7260 before Subcomm. No. 3 of the House Comm. on the Judiciary, 85th Cong., 2d Sess., at 14 (1958). See also Katz, 496 F.2d at 753-56. It placed this mechanism under "the immediate, sole, and broad control of Judges so that within reasonable limits disadvantages of piecemeal and final judgment appeals might both be avoided." Hadjipateras v. Pacifica, S.A., 290 F.2d at 702-03. In doing so, it has entrusted the judiciary with the responsibility of developing an interlocutory appellate procedure in light of its own perceptions of need and its ability to control a potentially explosive source of appeals. Congress instituted a guard against the proliferation of interlocutory appeals by requiring that district courts certify their orders pursuant to stated criteria as a prerequisite to section 1292(b) appeals, and by further making such appeals subject to our acceptance.
 
 
 39
 I believe that the issue in this case warrants review at this interlocutory stage. The criteria for district court certification have been established. The narrowness of the issue before us obviates the risk of establishing precedent that might open the floodgates of interlocutory appeals. The importance of that issue and the impossibility of its later review dictate that we exercise our discretion by accepting this application for interlocutory appeal. Cf. In re Virginia Electric & Power Co., 539 F.2d 357, 364 (4th Cir. 1976) (applying similar logic to justify interlocutory review of a judicial disqualification order).
 
 B. Collateral Order Doctrine
 
 40
 I also disagree with the majority's conclusion that we cannot exercise jurisdiction over Judge Muecke's recusal order pursuant to the Cohen collateral order doctrine. To come within that doctrine "the order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). The majority concedes that Judge Muecke's recusal order meets these requirements. It adds, however, that the collateral order doctrine is designed only to protect rights "the legal and practical value of which could be destroyed if ... (they are) not vindicated before trial." United States v. MacDonald, 435 U.S. 850, 859-60, 98 S.Ct. 1547, 1552-1553, 56 L.Ed.2d 18 (1978) (footnote omitted). It then argues that petitioners can assert no "claim of right," as required by Cohen, 337 U.S. at 546, 69 S.Ct. at 1225. That is, the parties can claim no right to have a particular judge hear their case. This argument ignores a significant plaintiffs' right. Plaintiffs are entitled to have their case proceed to trial without undue delay. See generally Fed.R.Civ.P. 1. This right is inarguably of "legal and practical value" and would seem to mount in importance as their case approaches trial.[2] Under the circumstances of this case an erroneously issued recusal order would infringe on this right by causing undue delay.[3]
 
 
 41
 Not only does the recusal order satisfy the judicially-fashioned requirements for collateral order appeals, its present review would also be consistent with the policies underlying the collateral order exception to the final judgment rule.[4] Because it recognized that the dangers of delaying review may occasionally exceed the risk, cost, and inconvenience of piecemeal review, the Court gives the finality requirement a "practical rather than a technical construction." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 171, 94 S.Ct. 2140, 2149, 40 L.Ed.2d 732 (1974), quoting from Cohen, 337 U.S. at 546, 69 S.Ct. at 1225. In the instant case, an appeal from Judge Muecke's recusal order would enable plaintiffs to obtain review of a question that would otherwise escape review. Just as important, review of the recusal order would not radically disserve any of the policies that the final judgment rule was designed to protect. A major risk of piecemeal review-disruption of the trial court proceedings-has already occurred in this case. Hearing this appeal would, at worst, only prolong the delay already injected into this proceeding.[5] Moreover, added delay in this case is justified because it would enable us to clarify the requirements of 28 U.S.C. § 455 and thereby potentially prevent unnecessary recusals that could cause delay in future cases. The instant case is one in which a practical construction of the finality rule is justified. I would allow a Cohen appeal.
 
 
 42
 To conclude, I think that the legal issue raised by Judge Muecke's recusal order is of major importance. It is likely to recur in future class action suits, where it will again affect the efficiency with which those cases proceed. Yet, because writs of mandamus will not issue unless the district court has committed "clear and indisputable" error, see United States v. Mehrmanesh, 652 F.2d 766, 770 (9th Cir. 1981); Arthur Young & Co. v. United States District Court, 549 F.2d 686, 691 (9th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 109, 54 L.Ed.2d 88 (1977), confining our review of this issue to occasions when writs of mandamus are sought may effectively cause it to escape the type of review by which it may be decided solely on its merits.
 
 I would accept this interlocutory appeal.[6]
 
 
 [1]
 Under 28 U.S.C. § 455(b)(4), a judge must disqualify himself where:
 He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.
 
 
 [2]
 Judge Muecke also ruled that Canon 3 C(1)(c) of the Code of Judicial Conduct, which is identical to 28 U.S.C. § 455(b)(4), also imposed a per se obligation that he recuse himself. In re Cement and Concrete Antitrust Litigation, 515 F.Supp. 1076, 1079 (D.Ariz.1981)
 
 
 [3]
 Apart from their Cohen argument, plaintiffs also assert that Judge Muecke's recusal order should be considered a final order and thus be reviewable under section 1291 since it deprives the plaintiffs of having their case heard at all. As we discuss in regard to the applicability of the collateral order doctrine, see infra, there is no merit to the argument that the recusal order effectively puts an end to the litigation on the basis that the Judicial Panel on Multi-District Litigation will be unable to reassign the case under 28 U.S.C. § 455(b)(4). Therefore, plaintiffs' argument that the recusal order in this case should be considered a final order must be rejected
 
 
 [4]
 28 U.S.C. § 1292(b) provides:
 When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order; Provided, however, That an application for an appeal hereunder shall not stay proceedings in the district court unless the district court or the Court of Appeals or a judge thereof shall so order.
 
 
 [5]
 We do not imply that issues collateral to the merits may never properly be the subject of a section 1292(b) appeal. This is only one factor that should be considered in determining whether permitting an appeal would materially affect the outcome of the litigation. We have allowed section 1292(b) appeals on issues that are clearly collateral to the merits. See, e.g., Lear Siegler, Inc. v. Adkins, 330 F.2d 595 (9th Cir. 1964); United Air Lines, Inc. v. Wiener, 286 F.2d 302 (9th Cir. 1961). In each instance, however, "exceptional circumstances" justified the departure from the basic policy of postponing appellate review until after the entry of a final judgment. See Coopers & Lybrand, supra, 437 U.S. at 475, 98 S.Ct. at 2461
 
 
 [1]
 These requirements are set forth in the text of 28 U.S.C. § 1292(b), which appears at note 4 of the majority's opinion
 
 
 [2]
 Judge Muecke reported, in his recusal order, that, "(w)hile trial is not yet underway, discovery has been substantial and is nearing completion." 515 F.Supp. at 1077. After more than five years of pretrial proceedings, the parties have significantly neared trial
 
 
 [3]
 Of course there is a countervailing right in having a disinterested judge preside over this litigation. Concededly, this right supercedes the right to go to trial promptly. It is not clear whether Judge Muecke is to be considered disinterested. Consequently, the clash between plaintiffs' right to proceed promptly to trial and the defendants' interest in assuring that a disinterested judge preside over the case merely highlights the importance of having us review the recusal order to determine whether plaintiffs' right to a prompt trial must be compromised
 
 
 [4]
 The final judgment rule is set forth in 28 U.S.C. § 1291
 
 
 [5]
 If we were to hear this appeal and affirm the recusal order, we would effectively leave the case where it stood when it first came before us. Alternatively, if we found grounds to reverse, we could return the litigation to Judge Muecke and obviate the delay that will occur if another judge is appointed to preside over this litigation
 
 
 [6]
 I also disagree with the majority's thinking regarding the effect that stockholdings by members of the Judicial Panel on Multi-District Litigation will have on their qualification to reassign the case. In my opinion, the reasons that would preclude a judge from adjudicating the merits of a case are equally relevant in determining whether a judge should participate in the reassignment of a case. Although this issue is not one of controlling importance since temporary appointments to the panel could be made, see 28 U.S.C. § 1407(b) (authorizing Chief Justice of United States to designate judges to serve as Panel members "from time to time"), thereby enabling it to reassign the case, the need to empanel other judges would present the prospect of additional delay