**COMING UP, INC. and Kim Corsaro, Plaintiffs,**

v.

**The CITY AND COUNTY OF SAN FRANCISCO, Richard Hongisto, Anthony Ribera, Gary Delagnes, Jerry Golz, and Tom Yuen, Defendants.**

**And Related Cross Claims.**

No. C–92–3714–DLJ.

United States District Court,
N.D. California.

June 21, 1994.

William Bennett Turner, Rogers, Joseph, O'Donnell & Quinn, San Francisco, CA, for plaintiffs.

Linda M. Ross, Matthew D. Davis, San Francisco, CA, for defendant City and County of San Francisco.

Robert R. Moore, Moore & Gulick, San Francisco, CA, for defendant Hongisto.

Bruce T. Wilson, Davis, Reno & Courtney, San Francisco, CA, for defendants, Officers.

## ORDER

JENSEN, District Judge.

On June 3, 1994, the Court heard plaintiffs' motions to reconsider the Court's grant of qualified immunity to defendant Officers and to reconsider the Court's grant of summary judgment to defendants for the denial of declaratory relief. The Court also heard defendant Hongisto's motions for the Court to reconsider its Order denying him qualified immunity and as to the scope of employment issue. Finally, the Court heard arguments on the defendant City's motion to dismiss the pending California constitutional claims. William Bennett Turner of Rogers, Joseph, O'Donnell & Quinn appeared for plaintiffs. Linda M. Ross and Matthew D. Davis appeared for defendant City and County of San Francisco, Robert R. Moore of Moore & Gulick appeared for defendant Hongisto, and Bruce T. Wilson of Davis, Reno & Courtney appeared for defendant Officers. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court finds as follows.

### BACKGROUND

The Court has previously described the factual setting of this matter. Some specific factual disputes have arisen regarding the motions under submission here and are considered *infra*, in the Court's analysis of each motion. For ease of review, however, the Court repeats the previous summary of facts from the Order of March 9, 1994.[1]

Briefly put, plaintiffs allege that then San Francisco Police Chief Richard Hongisto reacted to the publication of an issue of a local paper, the *Bay Times*, by attempting to prevent the free biweekly paper's circulation. The paper contained a front page story that was critical of defendant Hongisto's handling of demonstrations following the well-publicized verdict in the Rodney King beating case. Specifically, the plaintiffs contend that Police Chief Hongisto directed Sergeant Gary Delagnes to remove the *Bay Times* and Delagnes in turn instructed police inspector Jerry Golz and officer Tom Yuen to confiscate copies of the offending papers from news racks from which the free papers were distributed.

Plaintiffs contend that Hongisto's plan was executed during the early morning hours of May 8, 1992, when Delagnes, Golz, and Yuen, while on duty and driving an undercover police vehicle, seized the newspapers from the Mission, Castro, and Upper Market districts of San Francisco. Plaintiffs aver that between 2,000 and 4,000 copies of the newspaper were seized and that about 2,000 of the seized newspapers were eventually returned to plaintiffs by members of the San Francisco Police Department.

On May 15, 1992, after an investigation and a special meeting, the San Francisco Police Commission ("Commission") unanimously decided to discharge Hongisto for his involvement with the seizure of the *Bay Times* newspapers. On the same date, District Attorney Arlo Smith of the City and County of San Francisco announced that no criminal charges would be filed against Hongisto, explaining that the seizing of these newspapers did not violate state theft laws because the papers were given away for free.

### DISCUSSION

The Court has before it plaintiffs' motions to reconsider the Court's grant of qualified immunity to defendant Officers and to reconsider the Court's grant of summary judgment to defendants for the denial of declaratory relief. Also under submission are defendant Hongisto's motions for the Court to reconsider its Order denying him qualified immunity and as to the scope of employment issue. Also under submission is defendant City's motion to dismiss the pending California constitutional claims.

### I. Reconsideration of the Court's Qualified Immunity Ruling on Federal Causes of Action

#### A. Qualified Immunity for Defendant Officers

Plaintiffs object to the Court's Order on two grounds. First, plaintiffs urge the Court

---

1. This Court has also described the factual setting in its Order of August 6, 1993, 830 F.Supp. 1302.

to only consider the defense of qualified immunity with reference to "clearly established law." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Second, plaintiffs contend that the Court's previous ruling "ignored the existence of a genuine issue of material fact." Plaintiffs' Memorandum in Support of Motion to Reconsider at 3. As plaintiffs have suggested issues of fact and questions of law that merit reconsideration by the Court, the issues are considered in turn.[2]

Plaintiffs agree the Court enunciated the correct legal standard to be applied to questions of qualified immunity. Plaintiffs' Memorandum in Support of Motion to Reconsider at 3 ("[t]he Court acknowledged the proper legal standard."). The Court's Order of March 9, 1994 described the appropriate standard as the following:

Under the doctrine of qualified immunity, police officers "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable [police officer] would have known." *Harlow v. Fitzgerald*, [457 U.S. 800, 817], 102 S.Ct. 2727, 2738 [73 L.Ed.2d 396] (1982). However, even in the face of a clearly established constitutional right, police officers are entitled to qualified immunity if a reasonable police officer could have believed that the conduct involved was legal. *Anderson v. Creighton* [483 U.S. 635, 637–40], 107 S.Ct. 3034, 3038–39 [97 L.Ed.2d 523] (1987). Thus the availability of qualified immunity depends upon the " 'objective legal reasonableness' of the action ... in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson*, 483 U.S. at 637, 107 S.Ct. at 3038 (1987) (quoting *Harlow*, 457 U.S. at 817–20, 102 S.Ct. at 2738–39).

Order at 30.

Since this Court's March 9, 1994 Order, the Ninth Circuit has again summarized the proper analysis for determining whether qualified immunity is appropriate.

"First, the district court must determine whether the law governing the official's challenged conduct was clearly established at the time the challenged conduct occurred. The second step then asks whether, under the clearly established law, a reasonable officer could have believed the conduct was lawful. This is a test of the 'objective reasonableness' of the defendant's actions."

*Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir.1994) (citations omitted).

The law and facts of this case must accordingly be reviewed to determine whether the law at issue is clearly established and whether a reasonable officer could have believed his actions were lawful.

██ As a general matter, First Amendment jurisprudence is clearly well-established regarding the need to protect publishers and journalists from content based restrictions by governmental officials. Courts have repeatedly, eloquently, and in a wide variety of contexts, emphasized the generalized protections that a free press must receive to "fulfill its essential role in our democracy." *New York Times Co., v. United States*, 403 U.S. 713, 717, 91 S.Ct. 2140, 2143, 29 L.Ed.2d 822 (1971) (Black, J., concurring); *Hustler Magazine v. Falwell*, 485 U.S. 46, 50, 108 S.Ct. 876, 879, 99 L.Ed.2d 41 (1988) ("At the heart of the First Amendment is the recognition of the fundamental importance of the free flow of ideas and opinions on matters of public interest and concern."); *Grosjean v. American Press Co.*, 297 U.S. 233, 249–50, 56 S.Ct. 444, 449, 80 L.Ed. 660 (1936)

---

**2.** The Federal Rule of Civil Procedure 60(b) governs the reconsideration of final orders. That rule permits a district court to relieve a party from a final order or judgment on grounds of: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b), (3) fraud ... of an adverse party, ... or (6) any other reason justifying

relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken.
Fed.R.Civ.P. 60(b).
Motions to reconsider are committed to the discretion of the trial court. *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441 (D.C.Cir.1987).

("A free press stands as one of the great interpreters between the government and the people. To allow it to be fettered is to fetter ourselves."). There can be no doubt that restrictions based on content are highly impermissible. *See e.g., Texas v. Johnson,* 491 U.S. 397, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989). Similarly, there is no doubt that the Fourth Amendment generally provides a right not to have newspapers seized from newsracks without a warrant or probable cause. *See United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984); *Lo–Ji Sales, Inc.,* 442 U.S. 319, 326 n. 5, 99 S.Ct. 2319, 2324 n. 5, 60 L.Ed.2d 920 (1979) (finding there are "special constraints upon searches for and seizures of material arguably protected by the First Amendment.").

Broad statements of abstract principles, however, do not describe the legal situation faced by the officers in this case. As in *Mendoza,* the plaintiff's "legal right cannot be so general as to allow a plaintiff to 'convert the rule of qualified immunity into a rule of virtually unqualified immunity simply by alleging [a] violation of extremely abstract rights.'" 27 F.3d at 1361 (citations omitted). The Court of Appeals observed, "[f]or qualified immunity purposes, a right must [be] 'clearly established' in a more particularized sense: The contours of the right must be sufficiently clear that [at the time the allegedly unlawful action is taken] a reasonable official would understand that what he is doing violated that right." *Id.* (Citations omitted).

■ Defendants urge the Court to consider the relevant details of the situation here, including the fact that the papers were free, not all of them were taken, and many were returned. None of these details, however, demonstrates that the legal standard was not clearly established. First Amendment protection does not depend on whether the paper is distributed for free. *See Lockwood v. Plain Dealer Pub'g Co.,* 486 U.S. 750, 756 n. 5, 108 S.Ct. 2138, 2143 n. 5, 100 L.Ed.2d 771 (1988) ("[o]f Course, the degree of First Amendment protection is not diminished merely because the newspaper or speech is sold rather than given away."). Plaintiffs

have suggested that the impact upon their speech was more than merely speculative. Confiscation of the papers here could have deprived many thousands of readers of the publication. Plaintiffs note that it is not the number of papers that is most relevant. It is undisputed that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2690, 49 L.Ed.2d 547 (1976); see also *Nebraska Press Association v. Stuart,* 427 U.S. 539 at 609, 96 S.Ct. 2791 at 2827, 49 L.Ed.2d 683, (1976) (timeliness of political speech is particularly important).

There can be no doubt that publishers have a First Amendment right to distribute their papers without police interference based on content and all citizens have a Fourth Amendment right not to have their property seized without probable cause. *See* Order of March 9, 1994.

■ This Court must also consider whether, under the clearly established law, a reasonable officer could have believed the conduct was lawful. The United States Supreme Court has elaborated on the qualified immunity standard noting that it

> 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.' This accommodation for reasonable error exists because 'officials should not err on the side of caution' because they fear being sued.

*Hunter v. Bryant,* 502 U.S. 224, ——, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (citations omitted).

This admonition from the Supreme Court is relevant here, a case in which the objective reasonableness of the Officers' actions is disputed. The test requires that officers must "*affirmatively* show that their conduct was justified by an objectively reasonable belief that it was lawful." *Morgan v. Woessner,* 975 F.2d 629, 643 (9th Cir.1992) (emphasis in original) (citations omitted). Plaintiffs also note that where governmental action is "designed to retaliate against and chill political expression" the victim of such action is "entitled to sue the responsible officers." *Mende-*

*cino Environmental Center,* 14 F.3d 457 (9th Cir.1994). Qualified immunity can be denied even where "there was no Supreme Court case, or case in this circuit, which was binding on this circuit when the events in this case occurred." *Wood v. Ostrander,* 879 F.2d 583, 593 (9th Cir.1989). Plaintiffs note that courts have held officers may not be immune even when acting on the orders of the police chief. *See e.g., Glasson v. Louisville,* 518 F.2d 899 (6th Cir.), *cert. denied,* 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975).

In ruling on qualified immunity in another context, the Ninth Circuit has succinctly found to be "well-established" the principle that "government officials in general, and police officers in particular, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely, anyone who takes an oath of office knows—or should know— that much." *Duran v. City of Douglas, Ariz.,* 904 F.2d 1372 (9th Cir.1990); *see also Sloman v. Tadlock,* 21 F.3d 1462 (9th Cir. 1994) (finding officer's motives were "at issue" immunity denied officer who interfered with sidewalk campaigning because of the political views expressed by the plaintiff).

■ The Court cannot find, as alleged here, that an objectively reasonable officer could have believed that removing thousands of copies of a free newspaper from newsracks because of its content was lawful. Defendants have argued that the conduct at issue is whether it was proper to temporarily remove some of the free papers for distribution to other officers. However, the factual setting of this case indicates that there is a genuine issue of material fact as to whether the papers were removed by Delagnes and Yuen based on the paper's content and not motivated by any purpose of enforcing the criminal laws but to suppress plaintiffs' speech. If the papers were removed for the purposes alleged by plaintiffs, qualified immunity would be improper. The Court finds sufficient evidence to sustain such allegations against a summary judgment motion as regards defendants Delagnes and Yuen. Delagnes has explained his actions by stating that "the First Amendment is fine and dandy but you know, you got all these kids walking by and you got all these people walking by and they're looking at this stuff and this stuff is really trash." Turner Declaration, Exhibit J at 54. Delagnes action, moving the papers so they could not be seen from the street, is in keeping with a view that he sought to limit the distribution of ideas in the paper. *Id.* at 87. Delagnes is quoted as stating that he wanted to make sure the papers were "not exposed to the public" Exhibit M at 19, and as stating that "I'm going to go up there and get these off the racks because they repel me." *Id.* Delagnes has indicated that he "thought it [the papers] went beyond the First Amendment." Exhibit M at 27.

Yuen stated that he did not think "other people" should see the paper. Exhibits H and I. His statements and actions indicate there is a genuine material issue of fact as to whether he participated in removing the newspapers based on their content and was not motivated by any purpose of enforcing the criminal laws but to suppress plaintiffs' speech. Yuen is quoted as stating that he thought the paper "offensive," Exhibit L at 96, and that he pretended to be working for the newspaper while removing them. Exhibits H and I at 5. Plaintiffs describe Yuen as proudly telling his supervisor that "nobody, nobody, knew nothing about this" and as laughing. *Id.* Accordingly, there is a genuine issue of material fact as to whether Yuen removed the papers based solely on their content.

■ The evidence indicates, however, that defendant Golz was simply collecting the newspapers to distribute to fellow officers, and upon the orders of his supervisor. The evidence indicates Golz was told and thought the papers were to be "picked up for distribution throughout the rank and file of the police department" and that he thought the paper disgusting. Exhibit K at 119. Statements by defendant Golz indicate that he ceased participating when an adequate number of papers had been retrieved to be read by fellow officers, and that he stated, "I don't want no more to do with this. I said you got enough papers here to handle any distribution." Exhibit K at 120. Nothing in past cases indicates that an objectively reasonable officer in this context should know this con-

duct was unlawful. Nor is there clearly established law presented to indicate that Golz's collection of some free papers for the purpose of educating his fellow officers was unlawful.

Accordingly, upon reconsideration the Court will grant qualified immunity to defendant Golz only.

### B. *Hongisto's Claim of Qualified Immunity*

■ Defendant Hongisto contends the Court misapprehended the applicable rules of law and the facts of record before the Court. The defendant agrees that the Court correctly described the proper standard to be applied. Hongisto Memorandum for Reconsideration at 4. As in the case of the defendant Officers, the question is whether plaintiffs' rights were clearly established at the time the newspapers were confiscated, and whether an officer could reasonably believe the conduct was lawful. Defendant Hongisto objects to what he believes was a subjective inquiry into his motivations. The Court has found that the law is clearly established that removal of newspapers based solely on the content of the ideas and not motivated by any purpose of enforcing the criminal laws but to suppress plaintiffs' speech would be unlawful. Defendant Hongisto objects that the papers were removed for the purpose of educating officers. However, the Court has found that "[a]mple evidence exists to support the claim that Hongisto was insulted by the paper and sought to avoid having it read by others." Order at 11:12–14. The Court found summary judgment could not be granted on the issue of qualified immunity as Hongisto's position was contradicted by the testimony of numerous officers. *See e.g.*, Turner Declaration F, G, H, I, J, K, L, M, S, X and Y; (Alleging generally, that Hongisto told defendant Delagnes that he was repulsed and disgusted by the negative depiction of him in the paper, troubled by the impact on his wife and children, and sought action to "avoid further embarrassment." *See* Davis Decl., Exh. C. (Deposition of Gary Delagnes at 86–90). Thus, the evidence regarding Hongisto's actions in the matter indicates that his conduct may have violated clearly established statutory or constitutional rights. Further, there is insufficient evidence to indicate Hongisto's actions were objectively reasonable. An objectively reasonable officer could not have believed an unflattering portrayal of himself in the local press was lawful grounds to order the papers removed. Such a scenario presents a violation of clearly established law of which an objectively reasonable officer would. have known. Accordingly, summary judgment cannot be granted for defendant Hongisto on this issue.

### II. *Hongisto's Scope of Employment*

■ The Court's Order of March 9, 1994 found that summary judgment could not be granted to defendant Hongisto on the scope of employment issue. The Court found that "[s]ignificant aspects of the case would clearly be admissible at trial, easily enough to raise questions over whether Hongisto's actions were far outside the scope of employment." Order at 11–12 (footnotes omitted).

Defendant Hongisto cites the case of *Knott v. California*, decided after this Court's Order, to demonstrate that his actions should be considered within the scope of his employment. *Knott v. State*, 23 Cal.App.4th 210, 28 Cal.Rptr.2d 514 (1994). In *Knott*, a police officer lured a young woman off a freeway and strangled her in a secluded area. The court in *Knott* found the criminal conduct flowed directly from the .officer's abuse of authority, and that the cost should be borne by the public. *Id.* at 228, 28 Cal.Rptr.2d at 524 ("assuming [the] allegations are true, Peyer's criminal conduct flowed directly from Peyer's abuse of his authority as a traffic officer and therefore, as in *Mary M.*, it is appropriate that the cost resulting from such misuse should be borne by the public."). Further, Hongisto notes that this Court's reliance on the "personal" nature of Hongisto's action would seem misplaced after *Knott* and *Mary M. v. City of Los Angeles*, 54 Cal.3d 202, 285 Cal.Rptr. 99, 814 P.2d 1341 (1991), cases in which serious criminal conduct was considered within the scope of employment.

It is clear there is a strong disfavor for denials of respondeat superior liability in po-

718

lice officer cases. *See White v. County of Orange,* 166 Cal.App.3d 566, 571, 212 Cal. Rptr. 493 (1985) (distinguishing case of *Alma W. v. Oakland Unified School District,* 123 Cal.App.3d 133, 176 Cal.Rptr. 287 (1981), in which qualified immunity was not granted because school custodian employee deviated from duties for "personal purposes" from cases where defendant was a "police officer who is entrusted with a great deal of authority."). As *Knott* and *Mary M.* indicate, where the misconduct flowed directly from defendant police officer's abuse of his authority, the public should be held responsible for the cost of the damage. Here, the police chief, communicating via police channels with subordinate on-duty officers, requested action. Where the conduct in question is thus connected to the enterprise of law enforcement, vicarious liability must apply. Accordingly, the cost of Hongisto's conduct must be borne by the City and defendant Hongisto's motion for reconsideration on this question is GRANTED.

### III. State Law Immunity

The section of the Court's Order concerning qualified immunity concludes: "As the potential underlying issues coincide, it is noted that this finding also resolves Officers' qualified immunity status as regards state liability issues." Order at 32. Plaintiffs assert that "there is *no* comparable immunity under state law." Plaintiffs' Memorandum at 15 (emphasis in original).

It is clear, however, that there are numerous cases in which police officers have been found to be immune to suit pursuant to California Government Code § 820.2 (public employee not liable for injury where causal act or omission "was the result of discretion vested in him, whether or not the discretion be abused."). This language is similar to *Romero v. Kitsap County* in which the defense of qualified immunity was found to protect "government officials performing discretionary functions" in situations like those described above. 931 F.2d 624, 627 (9th Cir.1991) (citing *Harlow v. Fitzgerald, supra.*) Defendant Officers cite *Sullivan v. City of Sacramento,* 190 Cal.App.3d 1070, 1081, 235 Cal.Rptr. 844 (1987), in which a

police dispatcher was immunized for the discretionary act of deciding to make a phone call, and *Watts v. County of Sacramento,* 136 Cal.App.3d 232, 234, 186 Cal.Rptr. 154 (1982), in which immunity was granted for a decision to arrest, as examples of such discretion. As no state causes of action remain following this Order, however, the issue of state immunity no longer has significance in this case.

### IV. Certification of Interlocutory Appeal

■ The final judgment rule holds that appeal should lie only from an order that terminates litigation at the trial stage. *See* 28 U.S.C. § 1291; *see also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *In re Cement Antitrust Litig.,* 673 F.2d 1020 (9th Cir.1982), *aff'd,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). This rule reduces the points of error which must be reviewed to those that are material to the actual result, and provides efficiency by consolidating all grounds for appeal into a single action.

Section 1292(b) of Title 28 of the U.S.Code provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

28 U.S.C. § 1292(b).

■ Section 1292(b) is an exception to the established final judgment rule, and thus the party seeking certification "has the burden of showing that *exceptional circumstances* justify a departure from the 'basic policy of postponing appellate review until after the entry of a final judgment.'" *Fukuda v. County of Los Angeles,* 630 F.Supp. 228, 229 (C.D.Cal.1986) (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978)) (emphasis added). Each of the three requirements must be met before interlocutory appeal will be certified: (1) a controlling question of law; (2) substantial grounds for dif-

ference of opinion; and (3) immediate appeal may materially advance the ultimate termination of the litigation. *Cement Antitrust,* 673 F.2d at 1026.

■ As the Court has reconsidered its grant of qualified immunity for defendants Delagnes and Yuen, plaintiffs' rationale for seeking certification for interlocutory appeal is lessened somewhat. The Court notes that allowing the issue to be appealed would not materially advance the ultimate termination of the litigation. Indeed, an appeal of this issue is only slightly more meritorious than appeals of other claims already resolved by the Court. The case could well dissolve into a fragmentary stew of issues if every significant issue is certified for appeal. While the issue of qualified immunity presents some difficult questions of law, it has not been demonstrated that there are adequate grounds for interlocutory appeal.

## V. *Plaintiff's Declaratory Judgment Claim*

■ The parties agree that it lies within the Court's discretion to determine whether declaratory relief is proper. *See e.g., Moore's Federal Practice* § 57.08[1]. The Court previously found no reason to provide for declaratory relief as there was no showing of a danger that the action might be repeated. Plaintiffs argue that, although this circumstance might be determinative in nature on the issue of injunctive relief, it does not control the broader issue of the authority of the Court to provide declaratory relief. It should be noted that the Court has observed that the "relevant administrative bodies as well as numerous officials condemned the actions at issue here, actions which have never received official endorsement." Order at 24. The Court has found that nothing would be accomplished by a declaratory judgment in this matter. Moreover, it is apparent to the Court that the judicial declarations sought by the plaintiff would be of no force and effect in this or any other case and would be nothing more than an advisory opinion which courts are well advised to avoid. Accordingly, declaratory relief will not issue.

## VI. *Motion to Dismiss California Constitutional Claims*

In its Order of March 9, 1994, the Court deferred ruling on the question of a private right of action under the California Constitution and requested further briefing.

■ A constitutional provision is presumed to be self-executing unless a contrary intent is shown. *See Fenton v. Groveland Comm. Services Dist.,* 135 Cal.App.3d 797, 805, 185 Cal.Rptr. 758 (1982); 7 Witkin, *Summary of California Law,* § 52 (9th ed. 1988). However, in *Leger v. Stockton Unified School Dist.* the court observed that:

> The following rule has been consistently applied in California to determine whether a constitutional provision is self-executing in the sense of providing a specific method for its enforcement: 'A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given force of law.' 202 Cal.App.3d 1448, 1455, 249 Cal.Rptr. 688 (1988).

The California Constitutional provisions at issue here do not provide "rules by means of which" the principles at issue could be given force of law. *Id.* As in *Leger,* the provisions are devoid of "guidelines, mechanisms or procedures from which a damages remedy could be inferred." *Id.* Other courts in this district have reached the same conclusion and dismissed similar claims. *Brown et al. v. Jordan, et al.,* Northern District of California No. C-92-3624 FMS, (Jan. 7, 1994).

Plaintiffs, noting that the Court has denied relief under Civil Code § 52.1, urge the Court to find a cause of action is available to them under the California Constitution. However, the Court must apply the law and facts to the issue at hand. There is no requirement that the Court find at least one of plaintiffs' proposed causes of action survive summary judgment. Rather, where the facts and law require, plaintiffs may find

their claims relegated to state common law or statutory claims.[3]

Plaintiffs also urge the Court to apply *Laguna Publishing Co. v. Golden Rain Foundation* to this case and allow a direct claim based on the California Constitution. 131 Cal.App.3d 816, 182 Cal.Rptr. 813 (1982). The Court finds this argument ultimately unpersuasive. First, the Court notes that more recent cases, such as *Leger, supra,* and *Clausing v. San Francisco Unified School Dist.,* 221 Cal.App.3d 1224, 1236, 271 Cal. Rptr. 72 (1990), have not followed the reasoning of *Laguna.* Cases in this district have also reached a contrary outcome. *Brown et al., supra.* The factual circumstance of *Laguna* is also quite different from the case at issue here, as *Laguna* involved a quasi-governmental entity which intentionally precluded newspaper distribution within the community. The problem confronted in *Laguna* was one of classic governmental prior restraint to which the court allowed the application of the State's Constitution. Here, by contrast, as in *Leger,* the issue at hand is the application of the Constitution to injuries that were not ratified by official community policy. Finally, after *Laguna* was decided, the legislature enacted Civil Code § 52.1.[4] This legislation provides the proper mechanism by which the constitutional provisions at issue could be brought under state law. While the Court has found the requirements of § 52.1 were not satisfied by plaintiffs' evidentiary showing, nonetheless this statute is the proper vehicle for this type of action.

## VII. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiffs' motion to reconsider the Court's grant of qualified immunity to defendants Delagnes and Yuen is GRANTED. The motion to reconsider the grant of qualified immunity to defendant Golz is DENIED.

2. Plaintiffs' motion to reconsider the denial of declaratory relief is DENIED.

3. Defendant Hongisto's motion to reconsider the issue of his qualified immunity is DENIED.

4. Defendant Hongisto's motion for reconsideration of whether he acted within the scope of his employment is GRANTED.

5. Defendant City's motion to dismiss claims for damages under the California Constitution is GRANTED.

IT IS SO ORDERED.

---

3. Plaintiffs indicate that they may desire to amend their complaint to allege a cause of action for conversion. The Court will consider such a motion when and if it is offered.

4. California Civil Code § 52.1(a) provides that an individual may seek a remedy:

whenever a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution.