**Carol A. PARKER, Plaintiff,**

v.

**DANVILLE METAL STAMPING COMPANY, INC., Defendant.**

No. 84–2374.

United States District Court,
C.D. Illinois,
Danville Division.

Jan. 30, 1985.

---

David J. Ryan (Court Appointed), Danville, Ill., for plaintiff.

Patricia A. Brandin, Bradford L. Livingston, Chicago, Ill., John Jenkins, Danville, Ill., for defendant.

## ORDER

BAKER, Chief Judge.

On September 25, 1984, the plaintiff filed this action pursuant to Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.*, charging the defendant, Danville Metal Stamping, with employment discrimination. In particular, the plaintiff claims that she was denied proper wage increases and eventually was discharged because of her race and sex. The plaintiff also claims that she was subjected to racial harrassment by her supervisor. This matter is before the court on the defendant's "Motion to Dismiss and for Summary Judgment."

## I. FACTS

The plaintiff, Carol Parker, was the complainant in the case of *Carol Parker v. Danville Metal Stamping Company*, charge No. 1981SF–0445 (Illinois Human Rights Commission). On March 23, 1981, the plaintiff filed her charge of employment discrimination with the Illinois Department of Human Rights ("the DHR") claiming that the Danville Metal Stamping Company had discriminated against her on the basis of her race, sex, and "physical handicaps." The DHR conducted an investigation and held a fact-finding conference on September 11, 1981, which was attended by both parties and their witnesses. After reviewing the evidence, the DHR dismissed all of the charges for lack of substantial evidence.

The plaintiff then filed a request for a review of the DHR's decision with the Illinois Human Rights Commission ("the HRC") on April 21, 1982. On August 18, 1982, the HRC ruled that a hearing should be held to consider three of the plaintiff's allegations. Accordingly, the HRC issued a complaint on September 2, 1982, and assigned the matter to an administrative law judge ("ALJ") for an adjudicative hearing.

On September 30, 1982, the defendant answered the complaint and initiated the discovery process. The plaintiff's counsel answered the defendant's discovery requests and initiated discovery on the plaintiff's behalf, filing both a request for the production of documents and a set of interrogatories. The plaintiff's attorney also prepared a pre-hearing memorandum which was submitted to the HRC on December 21, 1982.

On December 28 and 29, 1982, an evidentiary hearing was held to adjudicate the merits of the plaintiff's complaint. During the two-day hearing, each party had an opportunity to examine and cross-examine witnesses under oath pursuant to the Illinois Rules of Evidence. The plaintiff's attorney made an opening statement, called five witnesses for examination, and offered six exhibits, all of which were admitted into evidence.

In a recommended order and decision dated September 14, 1983, the ALJ recommended that the HRC dismiss the plaintiff's complaint. After the defendant appealed the ALJ's failure to award the company its attorney's fees, a three-member panel of the HRC reviewed the findings of facts and conclusions of law contained within the recommended order. The panel affirmed the ALJ's findings and conclusions in a final order and decision dismiss-

ing the complaint. The plaintiff did not appeal the HRC's decision within the Illinois state court system, but instead filed this Title VII action in federal court.

## II. ANALYSIS

In its "Motion to Dismiss and for Summary Judgment", the defendant urges the court to follow the decision of the Northern District of Illinois in *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 590 F.Supp. 1146 (N.D.Ill.1984), and to bar this Title VII action by the doctrine of *res judicata.* In *Buckhalter*, the plaintiff alleged that he was discharged from his employment because of his race. The plaintiff first filed a charge of racial discrimination with the Illinois Fair Employment Practices Commission ("the FEPC").[1] After a full hearing, an ALJ dismissed the plaintiff's claims. The full HRC affirmed the dismissal. The plaintiff then was issued a right to sue letter from the EEOC and filed suit under Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. As in this case, the plaintiff in *Buckhalter* made the same claims as were considered and decided upon by the HRC. The district court in *Buckhalter* held that the plaintiff's claims were barred by the *res judicata* effect of the state administrative decision.

The district court in *Buckhalter* held that it was required to give "full faith and credit" and preclusive effect to a state administrative determination if the administrative tribunal was acting in a "judicial capacity" in rendering a decision. *Buckhalter*, 590 F.Supp. at 1149. The court thus distinguished the findings of a state agency in its investigative capacity from an agency's determinations in its "judicial capacity". *Buckhalter*, 590 F.Supp. at 1149. The district court further read *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 470 n. 7, 102 S.Ct. 1883, 1891 n. 7, 72 L.Ed.2d 262 (1982), as foreclosing *res judicata* effect only to those state administrative decisions which are investigative or

purely administrative in nature and not to the determinations of an agency when acting in a "judicial capacity". *Buckhalter*, 590 F.Supp. at 1148–1149.

The district court then noted that the HRC has no equivalent in the federal system, insofar as it is empowered to act in a judicial capacity. *Buckhalter*, 590 F.Supp. at 1149. Indeed, the HRC may grant several forms of relief upon a determination of a civil rights violation. *See* Ill.Rev.Stat. ch. 68, Par. 8–108. HRC decisions are given preclusive effect in Illinois courts and may be overturned only if contrary to the manifest weight of the evidence. Ill.Rev.Stat. ch. 68, Par. 8–111. A HRC holding may be appealed to the Illinois Circuit Courts pursuant to the Administrative Review Law (Ill.Rev.Stat. ch. 110, Par. 3–101 *et seq.*). Ill.Rev.Stat. ch. 68, Par. 8–111(a). In finding that the HRC determination should be given preclusive effect, the district court in *Buckhalter* also placed emphasis on the fact that the plaintiff was afforded due process before the HRC.

■ The court, however, disagrees with the Northern District of Illinois' interpretation of *Kremer* and its holding in *Buckhalter*. The court holds that the determination of the HRC in this case is not to be given preclusive effect in the plaintiff's subsequent Title VII action. The United States Supreme Court, in *Kremer v. Chemical Construction Corporation*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), held that a district court was required under the Full Faith and Credit Clause, United States Constitution, Article IV, § 1, and its implementing statute, 28 U.S.C. § 1738, to give preclusive effect to a state *court* decision upholding a state administrative agency's rejection of an employment discrimination claim. *Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899. The Full Faith and Credit Clause, implemented by § 1738, is the means by which state adjudications are made *res judicata.* *Batiste v. Furnco*

---

1. The FEPC was abolished by the repeal of the Illinois Fair Employment Practices Act in 1980. The subsequent enactment of the Illinois Human Rights Act, Ill.Rev.Stat. ch. 68, Par. 1–101 *et seq.* (1983), created the Illinois Human Rights Commission and the Illinois Department of Human Rights which enforce Illinois' antidiscrimination policies.

*Construction Company*, 503 F.2d 447, 457 (7th Cir.1974). The focus of the Supreme Court's attention in *Kremer* was on the state *court's* decision on review of the state administrative determination. The failure of the plaintiff in this case to fully pursue state procedures does not indicate the inadequacy of the procedures, *Kremer*, 456 U.S. at 485, 102 S.Ct. at 1899, but her failure to appeal the HRC's determination to a state circuit court does not elevate the HRC's findings to the level of a final state court judgment for *res judicata* purposes under Title VII.

 Indeed, the Supreme Court in *Kremer* found that Title VII is not immunized from the applications of "full faith and credit" and *res judicata* principles. The Supreme Court correctly recognized that no "affirmative showing" of a "clear and manifest" legislative intent exists behind Title VII to deny *res judicata* or collateral estoppel effect to a state court judgment affirming a state agency determination. *Kremer*, 456 U.S. at 468–76, 102 S.Ct. at 1890–94. An exception to 28 U.S.C. § 1738 will not be recognized unless a later statute contains an express or implied partial repeal. *Allen v. McCurry*, 449 U.S. 90, 99, 101 S.Ct. 411, 417, 66 L.Ed.2d 308 (1980). No claim is made that Title VII expressly repealed § 1738, and repeals by implication are not favored. *See Radzanower v. Touche Ross and Company*, 426 U.S. 148, 154, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). No manifest incompatability exists between Title VII and § 1738. *Kremer*, 456 U.S. at 470, 102 S.Ct. at 1891.

 The Supreme Court, however, sought not to force a collision, but to recognize an accommodation between the important precepts of Title VII on the one hand and *res judicata* and "full faith and credit" on the other hand. Title VII was enacted to assure equality of employment opportunities by removing practices and devices which discriminated on the basis of race, color, sex, religion, or national origin. *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 800, 93 S.Ct. 1817, 1823, 36 L.Ed.2d 668 (1973). Cooperation

and voluntary compliance were selected as the preferred means for achieving this goal. *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 44, 94 S.Ct. 1011, 1017, 39 L.Ed.2d 147 (1974). When an incident of alleged employment discrimination occurs in a state which prohibits such discrimination and which has established an "authority to grant or seek relief from such [discrimination]" no charge may be actively processed by the EEOC until the state remedy has been invoked and at least sixty days have passed, or until the state proceedings have terminated. 42 U.S.C. § 2000e–5(c). Thus, only after allowing an appropriate state agency the opportunity to resolve the complaint may an individual press the issue before the EEOC.

 Congress has evinced a general intent to afford parallel or overlapping remedies against discrimination. Title VII provides for consideration of employment discrimination claims in several forums. *See* 42 U.S.C. § 2000e–5(b) (EEOC); 42 U.S.C. § 2000e–5(c) (state and local agencies); 42 U.S.C. § 2000e–5(f) (federal courts). Title VII obviously was meant to supplement, not supplant, other laws and institutions relating to employment discrimination. *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 47–49, 94 S.Ct. 1011, 1019–1020, 39 L.Ed.2d 147 (1974). No provision of Title VII requires claimants to pursue in state courts an unfavorable state administrative action. *Kremer*, 456 U.S. at 469, 102 S.Ct. at 1890. The "civil action" authorized to follow consideration by federal and state administrative *agencies*, 42 U.S.C. § 2000e–5(f)(1), has been held to be a "trial de novo". *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 38, 94 S.Ct. 1011, 1015, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 798–799, 93 S.Ct. 1817, 1822–1823, 36 L.Ed.2d 668 (1973). The Supreme Court in *Kremer*, however, recognized that neither its decisions nor Title VII "indicate that the final judgment of the state *court* is subject to redetermination at such a trial." *Kremer*, 456 U.S. at 470, 102 S.Ct. at 1891. Similarly, the requirement that the EEOC

give "substantial weight" to findings made in state proceedings, 42 U.S.C. § 2000e–5(b), "indicates only the minimum level the EEOC must afford to all state determinations; it does not bar affording the greater preclusive effect which may be required by § 1738 if judicial action is involved." *Kremer*, 456 U.S. at 470, 102 S.Ct. at 1891.

The Supreme Court further stated that the EEOC's consideration of discrimination charges previously rejected by state agencies would be futile if federal courts were bound by such agency decisions. *Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. Since EEOC decisions do not preclude a trial de novo in federal court, "it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a state's own courts." *Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. The Supreme Court cited *Batiste v. Furnco Construction Corporation*, 503 F.2d 447 (7th Cir.1974), with approval for these propositions. Obviously, the Supreme Court reached an accommodation between the preclusive principles of "full faith and credit" and *res judicata*, and the important federal interest in combatting employment discrimination as codified in Title VII.

This accommodation in no way removes the responsibility for the enforcement of Title VII from the federal system. If such federal actions are barred by the applications of *res judicata*, the statutory scheme of deferral to state proceedings will be frustrated by requiring that a plaintiff first commence state proceedings, but abandon them before an adjudication is made. *Batiste*, 503 F.2d at 450. Congressional standards for the EEOC's examination of cases after state agency determinations were made would be meaningless if Congress had intended that those cases would be barred from federal judicial consideration. The EEOC, without any enforcement power, would be attempting to resolve disputes with defendants who are already insulated from any further legal action. *Batiste*, 503 F.2d at 450 n. 1.

The Seventh Circuit, in *Batiste*, also recognized that "other well-defined federal policies, statutory or constitutional" may compete with, but not eclipse, policies underlying § 1738 and principles of *res judicata*. *Batiste*, 503 F.2d at 450. The case of *Alexander v. Gardner-Denver Company*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), is illustrative. In *Alexander*, the Supreme Court held that an employee's statutory right to bring a Title VII action is not foreclosed by a final decision of an arbitrator under the non-discrimination clause of a collective bargaining agreement. *Alexander*, 415 U.S. at 59–60, 94 S.Ct. at 1025–1026. The decision of the arbitrator may be admitted into evidence and given appropriate weight. *Alexander*, 415 U.S. at 60, 94 S.Ct. at 1025. By following the prescribed arbitration procedures, the plaintiff did not waive his Title VII cause of action. *Alexander*, 415 U.S. at 51, 94 S.Ct. at 1021. This decision was made in light of the strong federal policy favoring arbitration of labor disputes. *See e.g., Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 455, 77 S.Ct. 912, 917, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1352–1353, 4 L.Ed.2d 1409 (1960). In enacting the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Congress indicated that it considered the policy against discrimination to be of the highest priority. *See e.g., Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968). Certainly, the strong federal policy to assure equality of employment opportunities by eliminating practices and devices that discriminate on the basis of race, color, sex, religion, and national origin, competes with, but does not eclipse, established principles such as *res judicata*. The Supreme Court in *Kremer* recognized this need for accommodation by limiting the application of *res judicata* in Title VII cases to state *court* judgments, not state administrative determinations. *See Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7.

*Kremer* reinforces the principle that federal courts have the ultimate enforcement responsibility under Title VII, while recognizing the "integral" role played by state courts within the statutory scheme. *Kremer*, 456 U.S. at 468–469, 102 S.Ct. at 1890–1891. A prior state court judgment upholding a state agency determination relating to employment discrimination cannot be disregarded. *Kremer*, 456 U.S. at 477, 102 S.Ct. at 1895. By vesting "final responsibility" in one forum, Congress did not intend to deny finality to decisions in another forum. *Kremer*, 456 U.S. at 477, 102 S.Ct. at 1895. Title VII, however, does not require a claimant to pursue an unfavorable state administrative action in state court. *Kremer*, 456 U.S. at 469, 102 S.Ct. at 1890.

Following *Kremer*, the unappealed determination of the HRC in this case is not the equal of final state court judgment. *See Kremer*, 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. The *"initial resort* to state administrative remedies does not deprive an individual of a right to a federal trial de novo on a Title VII claim." *Kremer*, 456 U.S. at 477, 102 S.Ct. at 1895. Concerns of comity and federalism, as well as for cooperation and voluntary compliance, were woven into Title VII in the form of referrals to state agencies when appropriate and the giving of substantial weight to state administrative determinations during subsequent EEOC investigations. *See* 42 U.S.C. § 2000e–5(b) and (c). The "final responsibility for *enforcement"* of Title VII must rest in federal court. *See Kremer*, 456 U.S. at 477, 102 S.Ct. at 1895 (emphasis added).

State proceedings need only satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to receive the "full faith and credit" guaranteed by federal law. *Kremer*, 456 U.S. at 481, 102 S.Ct. at 1897. Preclusive effect may not be given to a constitutionally infirm judgment. *Kremer*, 456 U.S. at 482, 102 S.Ct. at 1897. The due process afforded the plaintiff in this case does not raise the state administrative determinations to the level of a final state court judgment for Title VII purposes. An unappealed state administrative decision does not become a final state court decision under Title VII, as there is no requirement under the statute that a claimant pursue appeals through the state court system of an adverse administrative decision before bringing a Title VII action. *See Kremer*, 456 U.S. at 469, 102 S.Ct. at 1890.

The intent behind Title VII was to provide an avenue for relief in the federal courts for victims of employment discrimination. The plaintiff in this case went through a state administrative stage mandated by Title VII. No requirement exists in Title VII that the plaintiff must appeal the adverse state administrative results to the state courts. *Kremer* accommodates the federal policy against employment discrimination with the long standing principle of respect for state court judgments. The court disagrees with the holding of *Buckhalter* that an unappealed Illinois HRC determination bars the subsequent Title VII action in federal court. The plaintiff has done all she is required to do under Title VII in order to bring an employment discrimination action based upon race and sex. Accordingly, the plaintiff's Title VII action is not barred by *res judicata,* and the defendant's "Motion to Dismiss and for Summary Judgment" is denied.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment be, and hereby is, denied.