Frances FUKUDA, Plaintiff,

v.

The COUNTY OF LOS
ANGELES, Defendant.

No. CV–84–0029–AHS.

United States District Court,
C.D. California.

March 5, 1986.

Michael Worthington, Los Angeles, Cal.,
for plaintiff.

De Witt W. Clinton, County Counsel,
Lester J. Tolnai, Senior Deputy, Los Angeles, Cal., for defendant.

## ORDER DENYING APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

STOTLER, District Judge.

### INTRODUCTION

On December 5, 1985, Defendant the County of Los Angeles filed its motion for an order certifying interlocutory appeal of the Court's December 2, 1985 denial of summary judgment. Before the date for hearing, the Court ordered further briefing in the matter and rescheduled oral argument for February 24, 1986 at 10:00 a.m. On February 20, 1986, the Court submitted the matter for decision without oral argument. *See* Rule 78, Fed.R.Civ.P.

For the reasons set forth in this Order, the Court now denies defendant's application for interlocutory appeal.

### FACTS

Plaintiff Frances Fukuda, a woman of Japanese origin, began working for the County of Los Angeles in January of 1980. From the date of hiring until the date of her discharge, she occupied a variety of clerical positions with several departments.

Fukuda was discharged effective June 3, 1983. On May 26, 1983, she was informed

in writing that the grounds for discharge were (1) discourteousness and abusiveness to her co-workers and supervisor, (2) insubordination, and (3) tardiness and absenteeism. Fukuda requested and was granted a hearing on her discharge before the Civil Service Commission ("CSC"). For three days in August of 1983, the CSC conducted hearings on her claim. At the end of the hearing, it adopted a set of findings of fact and conclusions of law upholding the County's discharge as non-discriminatory. The findings and conclusions were made final on November 2, 1983.

On January 4, 1984, Fukuda filed her complaint in this Court, alleging a violation of Title VII, 42 U.S.C. 2000e, against the County. Fukuda filed an action in state superior court on February 7, 1984, seeking, among other things, judicial review of the CSC's decision "pursuant to ... Cal. Code of Civ.Pro. § 1085 and/or 1094.5." Memo in Support of Motion to Amend, Exh. A, at ¶ 32. Fukuda served the latter complaint on the County in December, 1984.

The County demurred in state court on January 9, 1985. Before the motion was ruled on, Fukuda voluntarily dismissed without prejudice her claims for administrative mandamus and for wrongful termination. The superior court judge proceeded to grant the demurrer on the remaining claims without leave to amend.

On February 13, 1985, Fukuda filed a motion in this Court for leave to amend her Complaint. She sought to add the claim for administrative mandamus that she voluntarily dismissed from her state court action. On March 26, 1985, the Court denied leave to amend, concluding that, because the Court clearly lacked jurisdiction to review the agency determination, addition of the request would be futile.

On November 4, 1985, the County moved for summary judgment, arguing that litigation of the issues in the Complaint was barred by the CSC determination. The Court denied the County's motion on December 2, 1985, after hearing oral argument. On December 5, 1985, the County brought the instant motion for certification of that interlocutory ruling.

## DISCUSSION

■ Certification pursuant to 28 U.S.C. § 1292(b) is appropriate only when an order involves a controlling issue of law as to which there is substantial ground for difference of opinion and when immediate appeal may materially advance the ultimate termination of the litigation. The party seeking certification has the burden of showing that exceptional circumstances justify a departure from the "basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461, 57 L.Ed.2d 351 (1978). *See In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020 (9th Cir. 1982). Defendant has not carried that burden in this case.

It is true that the issue of collateral estoppel decided by the Court on December 2, 1985 is "controlling" and that a contrary resolution of the issue could be determinative of the issues presented in this action. *In re Cement*, 673 F.2d at 1026.

But it is not true that immediate appeal is likely to advance the ultimate termination of this litigation. The Ninth Circuit Court of Appeals has not had occasion to decide the circumstances under which a state administrative determination can preclude litigation of a Title VII action in federal court. However, the United States Supreme Court discussed the relationship between a Title VII claim and the "full faith and credit" clause of 28 U.S.C. § 1738 in its decision in *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

In *Kremer*, plaintiff filed a charge with the Equal Employment Opportunity Commission immediately after he was discharged, asserting that his discharge was due to illegal discrimination. The EEOC referred the charges to the New York state agency entrusted with enforcing New York employment discrimination law, and the agency found no probable cause to believe

the employer had discriminated. (Although the agency was empowered to hold an evidentiary hearing on the matter, it did not do so because its investigation of the claims uncovered no evidence of discrimination, 456 U.S. at 483, 102 S.Ct. at 1898.) The determination was appealed to and upheld by the Appellate Division of the New York Supreme Court.

Later, the EEOC issued Kremer a right-to-sue letter, which he used to bring suit under Title VII in the United States District Court for the Southern District of New York. The district judge dismissed the complaint on grounds of res judicata, and the Second Circuit affirmed. The Supreme Court also affirmed:

> It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken. Here the [judgment of] the Appellate Division ... precludes Kremer from bringing "any other action, civil or criminal, based upon the same grievance" in the New York courts. By its terms, ... [§ 1738] preclude[s] Kremer from relitigating the same question in federal court.

456 U.S. at 466, 102 S.Ct. at 1890.

But "by its terms," § 1738 applies only to the judgments of state courts, not administrative agencies, and the Court carefully noted that determinations by the latter were not, by themselves, entitled to preclusive effect:

> EEOC review of discrimination charges previously rejected by state agencies would be pointless if the federal courts were bound by such agency decisions. [citation omitted] Nor is it plausible to suggest that Congress intended federal courts to be bound further by state administrative decisions than by decisions of the EEOC. Since it is settled that decisions by the EEOC do not preclude a trial de novo in federal court, it is clear that unreviewed administrative de-

terminations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts.

456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7.

Many courts have concluded that the exegesis in footnote 7 "made it clear ... that unreviewed administrative determinations by state agencies do not preclude a trial de novo in federal court even if the administrative decision were to be afforded preclusive effect in state courts." *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 361 n. 6 (4th Cir.1985); *Rosenfeld v. Department of Army*, 769 F.2d 237, 241 (4th Cir.1985) ("the Court noted that unreviewed administrative determinations by state agencies did not preclude a *de novo* review of a discrimination claim in federal court"); *Bottini v. Sadore Management Corp.*, 764 F.2d 116 (2d Cir.1985); *Heath v. John Morrell & Co.*, 768 F.2d 245, 248 (8th Cir.1985) (although a federal court generally applies res judicata when an "administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate ..., [a]n exception to this general rule has been recognized for Title VII claims"); *Reedy v. State of Florida, Department of Education*, 605 F.Supp. 172 (N.D.Fla.1985); *Jones v. Progress Lighting Corp.*, 595 F.Supp. 1031 (E.D.Pa.1984); *Parker v. Danville Metal Stamping Co.*, 603 F.Supp. 182 (C.D.Ill.1985). The Second Circuit's statement of the "footnote 7 rule" is typical:

> While private pursuit of relief may be made in more than one administrative forum, a complainant who carries his or her claim to a final judgment in a state court may nonetheless thereafter be denied access to the federal courts on that claim, in the interests of comity and economical judicial administration embodied in 28 U.S.C. § 1738 (1982). *See Kremer*, 456 U.S. at 470, 102 S.Ct. at 1891. Yet, at the same time, Title VII's authorization of a civil action—following a civil rights complaint that is carried no fur-

ther than consideration by a *state administrative agency*—has been uniformly interpreted to entitle the complainant to a trial *de novo* in federal court. *Id.* at 470 n. 7 [102 S.Ct. at 1891 n. 7].

*Bottini,* 764 F.2d at 120.

But judicial interpretation of *Kremer* has not been a monolith. In *Buckhalter v. Pepsi-Cola General Bottlers, Inc.,* 590 F.Supp. 1146 (N.D.Ill.1984), *aff'd,* 768 F.2d 842 (7th Cir.1985), the district court gave preclusive effect to an unreviewed agency decision. The court concluded that footnote 7 in *Kremer* applied "only to those administrative decisions which are investigatory or otherwise purely administrative in nature and not to determinations in which the administrative agency was empowered to and indeed acted in a judicial capacity." 590 F.Supp. at 1149. In reaching this conclusion, the court relied specifically upon *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), which was cited in footnote 26 of the *Kremer* opinion:

> Certainly, the administrative nature of the factfinding process is not dispositive. In *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 16 L.Ed.2d 642, 86 S.Ct. 1545 (1966), we held that, so long as opposing parties had an adequate opportunity to litigate disputed issues of fact, res judicata is properly applied to decisions of an administrative agency acting in a "judicial capacity."

*Kremer,* 456 U.S. at 485 n. 26, 102 S.Ct. at 1899 n. 26. *See Buckhalter,* 590 F.Supp. at 1149 ("*Buckhalter I*"). Because the Illinois agency that reviewed plaintiff's claim afforded plaintiff the full panoply of judicial process rights, the court held that its findings were res judicata.

In reviewing the trial court's decision, the Seventh Circuit Court of Appeals adopted its reasoning. The court addressed squarely the contention that footnote 7 prohibited preclusion:

> We believe that [the cited cases] misinterpret footnote 7 and fail to acknowledge the language in footnote 26 of the

*Kremer* opinion that under the doctrine of "administrative *res judicata,*" the decision of a state administrative agency acting in a judicial capacity is to be given *res judicata* effect. Moreover, these cases fail to make the critical distinction that in *Kremer* the NYHRD ... did not conduct an adjudicatory hearing on the merits of Kremer's ... claim.

*Buckhalter,* 768 F.2d at 853 ("*Buckhalter II*"). The court then further offered its reconciliation of *Kremer* and *Utah Construction:*

> The Court's reference to the EEOC in footnote 7 is extremely helpful and enlightening.... The EEOC clearly has no authority to conduct an adjudicatory hearing, instead, if it determines after a complete investigation that there is reasonable cause in the record to establish employment discrimination, the EEOC files a complaint in Federal district court.... In stark contrast, in many states, such as Illinois, the state administrative agency conducts a thorough investigation, and if it concludes that there is substantial evidence of employment discrimination, the state administrative agency, acting in a judicial capacity, conducts an adjudicative hearing with all of the concomitant procedural and evidentiary safeguards.... The import of footnote 7 is that neither an investigatory determination of the EEOC nor an investigatory determination of a state administrative agency precludes a trial de novo in Federal court. The Supreme Court made clear, however, in footnote 26 ... that when the state administrative agency acts in a judicial capacity, its ruling on the claim of employment discrimination is entitled to preclusive effect in the Federal court under the doctrine of "administrative *res judicata.*"

768 F.2d at 853–854. *See also Zywicki v. Moxness Products, Inc., Div. of Versa Technology, Inc.,* 610 F.Supp. 50, 52 (E.D. Wis.1985) (following the district court opinion in *Buckhalter* and characterizing the issue thus: "How many times, one might ask, must a defendant win the game before

the match is over?"); *Parker v. National Corp. for Housing Partnerships,* 619 F.Supp. 1061, 1065 (D.C.D.C.1985) (unreviewed agency determination afforded res judicata effect).

Although there is some difference of opinion on the meaning to be given footnote 7 of *Kremer,* the construction offered in *Reedy, Heath, Bottini,* et al., is more persuasive than that adopted by the *Buckhalter* courts. As one court observed, in declining to follow *Buckhalter:*

> In [*Jones* ], the court reached the opposite conclusion and expressly declined to adopt the analysis in *Buckhalter [I].* The court felt that the result in *Buckhalter* "directly contravenes the Supreme Court's clear admonition" that unreviewed agency determinations do not preclude *de novo* review in federal court. *Id.* at 1034.

> This court too declines to follow *Buckhalter.* The *Buckhalter* court's interpretation of *Kremer* ... is unconvincing in light of the debate between the majority and the dissent on the prudence of foregoing state court review. The *Buckhalter* court's reading of footnote 7 is unconvincing because the New York agency under review in *Kremer* also had judicial powers, and yet the majority still conceded the possibility that litigants could end-run *Kremer* by foregoing state review. Furthermore, the reasoning in *Jones,* that the dicta in *Utah Construction* has no application to the Title VII statutory scheme, is persuasive because Congress clearly contemplated that employment discrimination claims could be litigated in several forums.

*Reedy,* 605 F.Supp. at 173–174. Further, the Seventh Circuit's inference of a relationship between footnotes 7 and 26 seems unwarranted in light of the structure of the *Kremer* opinion. The Supreme Court cited *Utah Construction* only to emphasize that the panoply of procedures available to Kremer comported with due process and offered him sufficient opportunity to litigate disputed issues of fact *before* undertaking review in the state court system. *Kremer,* 456 U.S. at 484–485, 102 S.Ct. at

1899 (because Kremer was offered a "full and fair opportunity to litigate the merits" of his claim, a federal court would give "collateral estoppel effect to a state court judgment affirming that [his] claim [was] unproved").

Indeed, footnote 7 appears to have been added by the *Kremer* majority expressly to avoid the *Buckhalter* result. The authors of both dissenting opinions observed that the majority holding could not have been extended to unreviewed determinations by a state agency:

> The Court, as it must, concedes that a state *agency* determination does not preclude a trial de novo in federal district court. Ante, at 468–470, and n. 7, 72 L.Ed.2d, at 272–273 [and n. 7, 102 S.Ct. at 1890–1891, and n. 7]. Congress made it clear beyond doubt that state agency findings would not prevent the Title VII complainant from filing suit in federal court.

456 U.S. at 487, 102 S.Ct. at 1900 (Blackmun, Brennan, and Marshall, JJ., dissenting) (emphasis in original). And Justice Stevens, in his separate dissent, wrote:

> The issue that divides the Court is fairly narrow. The majority concedes that state agency proceedings will not bar a federal claim under Title VII, ante, at 470, n. 7 [72 L.Ed.2d at 273, n. 7, 102 S.Ct. at 1891, n. 7] ..., and Justice Blackmun assumes, arguendo, that a state court decision on the merits of a discrimination claim would create such a bar.... Thus, the area of dispute is limited to cases in which an adverse agency decision has been reviewed and upheld by a state court.

456 U.S. at 509, 102 S.Ct. at 1911 (Stevens, J., dissenting).

Furthermore, if one accepts the *Buckhalter* rationale that footnote 7 was limited to agencies conducting *investigatory* activities, it is hard to justify its inclusion in the *Kremer* opinion. The rule of *Utah Construction* would by itself seem to bar giving preclusive effect to any state administrative determination unless the agency

was acting in a "judicial capacity." Under the *Buckhalter* reading then, footnote 7 does not describe a principled exception that Congress intended for Title VII claims; rather, it gratuitously restates the general *Utah Construction* rule.

## CONCLUSION

■ ■ For the foregoing reasons, this Court concludes that the unreviewed determination of the County's Civil Service Commission does not preclude maintenance of plaintiff's action. The Court further concludes that immediate appeal is not likely to advance the ultimate termination of this litigation. Defendant's application for certification pursuant to 28 U.S.C. § 1292(b) is therefore denied.

IT IS SO ORDERED.

IT IS FURTHER ORDERED that the Clerk shall serve, by United States mail, a copy of this Order on counsel for all parties in this action.