**Joseph E. SHURANCE, Plaintiff–Respondent,**

v.

**PLANNING CONTROL INTERNATIONAL, INC., Defendant–Petitioner.**

**No. 87–8247.**

United States Court of Appeals, Ninth Circuit.

Feb. 18, 1988.

Arthur Nakazato, Kircher & Nakazato, Los Angeles, Cal., for defendant-petitioner.

No appearance for plaintiff-respondent.

Before TANG, FLETCHER and FARRIS, Circuit Judges.

## ORDER

Petitioner (PCI) seeks leave under 28 U.S.C. § 1292(b) to appeal the district court's denial of PCI's motion to disqualify opposing counsel.[1] Before the district court, PCI argued that counsel should be disqualified for violating professional ethics by contacting a former PCI employee and obtaining privileged information about that employee's communications with PCI's corporate counsel.

The issue is whether we may review the denial of a disqualification motion certified for immediate appeal under section 1292(b). This section allows for appeals of interlocutory orders which involve "a controlling question of law as to which there is substantial ground for difference of opinion and [ ] an immediate appeal from the order may materially advance the ultimate termination of the litigation...."

This Circuit defined "controlling question of law" in *In re Cement Antitrust Litigation,* 673 F.2d 1020 (9th Cir.1982), holding that petitioner must show that "resolution of the issue in the district court." *Id.* at 1026. *In re Cement* held that a trial judge's decision to recuse himself "must be

---

1. We have previously denied PCI's petition in an unpublished order and noted that an opinion would follow.

viewed as collateral to the basic issues of this lawsuit", and therefore denied leave to appeal under section 1292(b). *Id.* at 1027.

We hold that the denial of this motion for disqualification similarly fails to present a controlling question of law. Resolution of the issue on appeal would not affect the outcome of litigation in the district court unless counsel for Shurance used the fruits of the alleged ethical violation as evidence. However, PCI could protect itself against this possibility by moving for a protective order limiting counsel's use of information obtained as a result of any ethical violation. PCI could also file motions in limine and object at trial to evidence obtained as a result of any ethical violation.

We also find that to allow interlocutory appeal of this motion would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Indeed, an interlocutory appeal might well have the effect of delaying the resolution of this litigation, for an appeal probably could not be completed before July, 1988, when trial is currently scheduled.

Petitioner argues that *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), supports the proposition that an appeal of a denial of a disqualification motion meets the requirements of section 1292(b). In *Firestone,* the Court held that a district court's denial of a motion to disqualify opposing counsel was

not directly appealable under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). In dicta, the court suggested that the unsuccessful movant might seek leave to appeal under § 1292(b), but only where "absolutely determined that it will be harmed irreparably." 449 U.S. at 378 n. 13, 101 S.Ct. at 676 n. 13. As noted above, PCI has not shown itself threatened by irreparable harm.[2] We find the dicta in *Firestone* to be inapplicable.

Petitioner also points to dicta in *Cord v. Smith,* 338 F.2d 516, 521 (9th Cir.1964), suggesting that section 1292(b) might be available if a disqualification motion were denied. *Cord,* like *Firestone,* held only that the denial of a disqualification motion was not appealable as a matter of right. We subsequently had an opportunity to address the section 1292(b) question in *Trone v. Smith,* 553 F.2d 1207 (9th Cir. 1977), where we repudiated the dicta in *Cord* and concluded "that 28 U.S.C. § 1292(b) is not the proper avenue by which to obtain review of the district court's denial of a motion to disqualify an attorney for conflict of interest." *Id.* at 1207.[3]

Even if the requirements of 1292(b) were met here, we would still have discretion to refuse to hear the appeal, "in much the same manner that the Supreme Court today refuses to entertain applications for

---

**2.** The *Firestone* Court rejected a claim, similar to PCI's here, that appellant was irreparably harmed because "the proceedings may be indelibly stamped or shaped with the fruits of a breach of confidence...." *Id.* at 376, 101 S.Ct. at 674. The Court explained: "The propriety of the district court's denial of a disqualification motion will often be difficult to assess until its impact on the underlying litigation may be evaluated, which is normally only after final judgment. The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand...." *Id.* at 368, 101 S.Ct. at 669. These observations confirm our view that the question of disqualification here does not represent a controlling question of law.

**3.** The clarity of the rule laid down in *Trone* is not affected by *Trust Corp. of Montana v. Piper Aircraft Corp.,* 701 F.2d 85, 88 (9th Cir.1983), where the court stated that there was jurisdiction under § 1292(b) because a motions panel had previously granted leave to appeal. The

*Trust Corp.* panel was bound by the law of the case to find jurisdiction; we, however, are not bound by the unpublished disposition of the motions panel in *Trust Corp. See* Ninth Circuit Rule 36–3. Moreover, the facts of *Trust Corp.* suggest that, unlike here, the appellant was threatened with irreparable harm. Counsel for the defendant had formerly represented plaintiffs' decedent and thereby obtained confidential information regarding his financial status. The disqualification motion was made after 20 depositions and numerous interrogatories, motions and briefs had been prepared. The challenged lawyers' work "infiltrated the entire case." *Id.* at 87. Thus the motions panel in *Trust Corp.* was faced with a situation where protective orders and evidentiary motions would be ineffective because of the extreme difficulty in identifying the fruits of the alleged ethical violation. PCI has not met its burden of showing any similar difficulty in the instant case.

writs of certiorari." S.Rep. No. 2434, 85th Cong., 2d Sess. 4, *reprinted in* 1958 U.S. Code Cong. & Admin.News 5255, 5257. That discretion must be guided by our "concern about 'tactical use of disqualification motions' to harass opposing counsel." *Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 436, 105 S.Ct. 2757, 2764, 86 L.Ed. 2d 340 (1985). "Because of this potential for abuse, disqualification motions should be subjected to 'particularly strict judicial scrutiny.' " *Optyl Eyewear Fashion Intern. Corp. v. Style Cos., Ltd.,* 760 F.2d 1045, 1050 (9th Cir.1985) (citation omitted). *See also Richardson–Merrell,* 472 U.S. at 441, 105 S.Ct. at 2766 (Brennan, J., concurring) ("the tactical use of attorney-misconduct disqualification motions is a deeply disturbing phenomenon in modern civil litigation.").[4]

Allowing section 1292(b) appeal of disqualification motions would greatly enhance their usefulness as a tactical ploy. Accordingly, even if we found this appeal met the requirements of section 1292(b), we would nonetheless exercise our discretion to deny leave to appeal.

Petition for leave to appeal denied.

---

**4.** We do not imply that the use of the motion in this case was improper.