**Diosdodo Z. MATEO, et al., Plaintiffs,**

v.

**The M/S KISO, et al., Defendants.**

**No. C–90–2357 DLJ.**

United States District Court,
N.D. California.

March 9, 1992.

Marvin Stender, Esq., of McTernan, Stender & Walsh, San Francisco, Cal., and Richard Dodson, Sole Practitioner, Baton Rouge, La., for plaintiffs.

Frederick W. Wentker, Jr., and Phillip Dalton, of Lillick & Charles, San Francisco, Cal., for defendants.

## ORDER

JENSEN, District Judge.

There are three motions before the Court. First, several defendants have filed a motion to quash service of process. Second, other defendants have filed a motion for summary adjudication of the issue of whether certain elements of plaintiffs' benefit package constitute "wages" under 46 U.S.C. § 10313. Third, plaintiffs have filed a motion to certify an interlocutory appeal. A hearing was held on the first two motions on January 15, 1992, and the third motion was heard on January 29, 1992. At both hearings, plaintiffs were represented by Marvin Stender and defendants were represented by Frederick Wentker. Having considered the papers submitted and the arguments of counsel, the Court GRANTS defendants' motion to quash service of process, GRANTS in part and DENIES defendants' motion for summary adjudication, and DENIES plaintiffs' motion to certify an interlocutory appeal.

## I. MOTION TO QUASH SERVICE OF PROCESS

### A. *Background*

The four defendants bringing this motion are foreign corporations doing business outside the United States which plaintiffs attempted to serve by certified mail. Defendant Universal Sea Transport, S.A. (UST) is a Panamanian corporation with its principal place of business located in Japan. *See* Defendant Universal Sea Transport, S.A.'s Memorandum of Points and Authorities re Motion to Quash Attempted Service of Process Upon Defendant Universal Sea Transport, S.A. Under Rule 12(b)(5), at 1 [hereinafter UST Memorandum]. During 1990, in order to comply with Phillipine law, UST designated Trans–Phil Marine Enterprises, Inc. (Trans–Phil) as its agent for service of process in Manila. *Id.* at 7–8. This agency relationship was terminated by UST effective January 5, 1991. *Id.* at 2. Despite this termination, in September 1991 plaintiffs attempted to effect service of process on UST by sending the complaint and summons by certified mail to Trans–Phil. *Id.* Although Trans–Phil was no longer serving as UST's agent, someone at Trans–Phil signed for the letter and a receipt was returned to plaintiffs. *Id.* UST now claims that service was insufficient because Trans–Phil was not its agent.

Defendants Vesta Co., Ltd. (Vesta), Nippon Yusen Kaisha Ship Management Co., Ltd. (NYK), and Orion Shipping Co., Ltd. (Orion) are Japanese corporations with their principle places of business in Japan. In September 1991, plaintiffs attempted to effectuate service of process on these defendants by sending the complaint by certified mail to them in Japan. *See* Memorandum of Points and Authorities in Support of Motion to Quash Service of Process Against Vesta Co., Ltd., Nippon Yusen Kaisha Ship Management Co., Ltd., and Orion Shipping Co., Ltd., at 1 [hereinafter Japanese Defendants' Memorandum]. All three of the defendants refused to accept the

letters and they were returned unopened to the United States. *Id.* Vesta, however, participated in this litigation anyway, filing motions to dismiss on September 18, 1990 and December 19, 1990.

### B. *UST's Motion to Quash*
#### 1. *Legal Standard*

■ The Court cannot exercise personal jurisdiction over a defendant unless there has been proper service over a defendant pursuant to Federal Rule of Civil Procedure 4. *Direct Mail Specialists v. Eclat Computerized Technologies, Inc.,* 840 F.2d 685, 688 (9th Cir.1988) (citing *Jackson v. Hayakawa,* 682 F.2d 1344, 1347 (9th Cir. 1982)). Without substantial compliance with Rule 4, it is irrelevant whether a defendant has notice of a plaintiff's claims. *Id.*

■ Under Rule 4, there are two ways to serve overseas defendants.[1] First, Rule 4(e) permits service according to a state statute if a defendant resides outside of the state in which the federal court sits. In this case, California Code of Civil Procedure § 415.40 allows service by "sending a copy of the summons and of the complaint to the person to be served by first class mail, postage prepaid, requiring return receipt." (West 1973 & Supp.1992). Second, service may be made according to Rule 4(i), which permits, among other methods, the sending of "any form of mail, requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served." Fed.R.Civ.P. 4(i)(1)(D). Implicit in both of these methods is the requirement that the letters be sent to the defendant or the defendant's legal agent. *See Eclat,* 840 F.2d at 688. The burden is generally on the plaintiff to demonstrate that the service of process was sufficient. *See Wells v. City of Portland,* 102 F.R.D. 796, 799 (D.Or.1984).

■ There is a time limit within which a plaintiff must serve the complaint and sum-

---

1. Rule 4 only applies, of course, if the defendants are not found in a country which is a signatory to the Hague Convention. As the Phillipines have not signed the Hague Convention, the Federal Rules of Civil Procedure govern service. The Hague Convention is discussed in Section I(C)(1), *infra.*

mons on the defendants. Rule 4(j) states that

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative.... This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.

The Ninth Circuit has held that dismissal under this provision is mandatory if plaintiff waits longer than 120 days after the complaint has been filed. *See Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir.1985). "Good cause" for delay longer than 120 days generally means that service had been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control. *Id.*

■ Insufficiency of process is not a favored defense. Rule 12 permits a defendant to raise the defense of insufficiency of process in either the answer or in a pre-answer motion to dismiss. Fed.R.Civ.P. 12(b). However, if a defendant files a motion to dismiss and does not argue that process was insufficient, the defense is deemed to have been waived. *See* Fed.R.Civ.P. 12(g), (h)(1).

### 2. Analysis

UST argues that service of process was insufficient for two reasons. First, Trans–Phil was not UST's agent in September 1991, meaning that UST did not receive the complaint and summons within the meaning of California Code of Civil Procedure § 415.40. UST's Memorandum, at 2. Second, UST argues that because Trans–Phil was appointed as an agent to receive process in the Phillipines due to the requirements of Phillipine law, an American plaintiff filing in this country should not be able to serve UST through Trans–Phil. *Id.* at 7–8.

Plaintiffs respond that the Court may exercise personal jurisdiction over defendants even without exact compliance with the California statute. Due process only requires that a defendant have notice of an action and an opportunity to defend against the claims. *See* Plaintiffs' Opposition to Defendants' Motion to Quash Service Upon Defendant Universal Sea Transport, S.A., at 2–3 [hereinafter Plaintiffs' Opposition to UST Motion]. As UST had both notice and the opportunity to hire counsel to represent it, there need not be exact compliance with the rules governing service. *Id.* Plaintiffs also argue that whether Trans–Phil was UST's agent is a matter of fact, meaning that they should be allowed to pursue discovery before the complaint is dismissed for lack of service. *Id.* at 4–5.

■ The Court finds UST's arguments to be persuasive. First, plaintiffs waited too long to attempt service on defendants. The complaint in this action was filed on August 17, 1990 and was amended on December 3, 1990. Plaintiffs did not attempt service until September 1991, which was at least nine months later. This delay is far longer than the 120 days provided by Rule 4(j).

There is no question that the time limitation in Rule 4(j) applies in this case. Although the rule specifically exempts attempts at service under Rule 4(i), plaintiffs in this case apparently attempted to serve UST pursuant to Rule 4(e) and the California statute as the certified letter was not sent by the clerk of the court (as it would if service was attempted pursuant to Rule 4(i)). Moreover, Rule 4(j) explicitly invites the Court to dismiss complaints on its own initiative due to tardy attempts to effect service. As plaintiffs have not made a showing of "good cause," the complaint will be dismissed pursuant to Rule 4(j).

Second, even if plaintiffs had attempted to effect service within the 120 day time period, the letter containing the complaint and summons did not reach UST. UST has presented evidence that Trans–Phil was not its agent in September 1991, *see* Castillo Declaration, at 3, and plaintiffs have not presented any evidence to the contrary.

As plaintiffs have the burden of demonstrating that service of process was valid, *Wells v. City of Portland*, 102 F.R.D. at 799, the Court finds that Trans–Phil was not UST's agent. Plaintiffs have no right to an evidentiary hearing on the issue of agency when they have presented no evidence to create a disputed issue of fact regarding agency. Accordingly, the Court GRANTS UST's motion to quash service of process.

### C. Japanese Defendants' Motion to Quash

#### 1. Legal Standard

In 1972, the United States signed the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, [1969] 20 U.S.T. 361, TIAS No. 6638 [hereinafter Hague Convention]. Commonly known as the Hague Convention, this treaty governs the international service of process between the United States and other countries that have signed it. *Newport Components v. NEC Home Electronics*, 671 F.Supp. 1525, 1541 (C.D.Cal.1987). As Japan entered into the Hague Convention in 1970, the service of process on defendants in Japan is governed by its terms. *See id.*

Under the Hague Convention, parties seeking to serve a defendant in a signatory country generally must send their request for service to a "central authority" in that country. Hague Convention, Art. 2. In Japan, that authority is apparently the Ministry of Foreign Affairs. *See* Japanese Defendants' Memorandum, at 3. Once it has the request for service, the central authority either serves the document in accordance with local law or according to another requested method that is not inconsistent with local law. Hague Convention, Art. 5. Among other things, Japan apparently requires that the document be translated into Japanese. *See* Japanese Defendants' Memorandum, at 11.

Article 10 of the Hague Convention allows for an alternative procedure for service. It states that

Provided that the State of destination does not object, the present Convention shall not interfere with—

(a) the freedom to send judicial documents, by postal channels, directly to person abroad,

(b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination, [or]

(c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials, or other competent persons of the State of destination.

Hague Convention, Art. 10. When Japan signed the Convention, it objected to Articles 10(b) and 10(c), but not to Article 10(a). *See Newport Components*, 671 F.Supp. at 1541. Therefore, if there is to be service on a Japanese citizen by means other than service on the central authority, it must be pursuant to the terms of Article 10(a).

The cases are split on whether Article 10(a) permits direct service by mail to defendants residing in Japan. One line of cases holds that service by mail to Japan is effective under the Hague Convention because Article 10(a) allows persons to "send judicial documents directly to persons abroad." These cases argue that to interpret Article 10(a) to not allow service by mail would make the terms of that section superfluous. *See, e.g., Newport Components*, 671 F.Supp. at 1541. This interpretation of Article 10(a) has been characterized as the majority view. *Meyers v. Asics Corp.*, 711 F.Supp. 1001, 1007 (C.D.Cal. 1989).

A second line of cases, however, argues that a plaintiff cannot serve a Japanese defendant via a direct mailing. They reason that because Japan objected to Articles 10(b) and 10(c), which contain the word "service" in them, the Japanese clearly did not want to allow service by mail. *See Newport Components*, 671 F.Supp. at 1541–42 (citing cases taking this position). This approach focuses on the difference in

meaning between the verbs "send" which is contained in Article 10(a) and "effect service" which are found in Articles 10(b) and 10(c). As Article 10(a) only allows a party to "send" legal documents by mail, these cases would not allow there to be service under this provision.

Defendants add to the arguments made by this second line of cases the fact that Japanese plaintiffs are not able to effect service by mail under their civil law. Japanese Defendants' Memorandum, at 6–7, 10–12. As there is no such thing as service by mail in Japan, defendants argue that the Japanese government did not expect that Article 10(a) would allow such a procedure. *Id.* Moreover, they note that Japanese courts generally will not enforce foreign judgments against Japanese citizens where service was not effected through a filing with the Ministry of Foreign Affairs. *Id.* at 11 (citing to declaration of Japanese legal expert). Defendants thus conclude that plaintiffs' attempted service by mail is insufficient under the Hague Convention.

### 2. Analysis

As plaintiffs attempted to serve the Japanese defendants by certified mail and not by sending the summons to the Japanese Ministry of Foreign Affairs, service can only be proper if Article 10(a) of the Hague Convention allows service by mail. As no Ninth Circuit opinion has directly ruled on this issue, the Court must consider which interpretation of Article 10(a) is most persuasive.

Having considered the issue, the Court finds that Article 10(a) does not permit direct service by certified mail. First, the language used in Article 10 indicates that Article 10(a) was not intended to permit service. Article 10(a) uses the word "send" while Articles 10(b)–(c) use the words "effect service of process." As the language used in international treaties is usually chosen with great care, the Court strictly construes Article 10(a) only to allow the sending of legal documents other than summons.

Second, the unavailability of service by mail in Japanese legal actions and the unwillingness of the Japanese government to enforce judgments against Japanese citizens who were not served through the Foreign Ministry indicates that Japan did not intend Article 10(a) to permit service of process by mail.

The cases point both ways on this issue, but the Court finds that the better reasoned cases support the view that Article 10(a) does not permit service by mail on Japanese defendants. Accordingly, the Japanese defendants' motion to quash is GRANTED.

## II. MOTION FOR SUMMARY ADJUDICATION

■ Defendants have filed two motions for summary adjudication on the issues of whether "paid vacation" and "per diem" payments to plaintiffs constitute wages within the meaning of 46 U.S.C. § 10313 (Section 10313). The Court has already held in its August 13, 1991 order that vacation pay constituted "wages" within the meaning of Section 10313, thus the vacation pay motion is more accurately characterized as a motion for reconsideration. *See* Defendant M/S Kiso's Memorandum of Points and Authorities re Motion for Summary Adjudication on "Paid Vacation" Issues, at 4 [hereinafter Defendants' Vacation Pay Memorandum]. In bringing this motion, defendants present no new evidence and do not argue that there has been a change in controlling law. Thus, defendants have failed to meet the standard for a motion to reconsider as they revisit the issue with arguments that were either made at that time or could have been made at that time. *See Fay Corp. v. Bat Holdings I, Inc.,* 651 F.Supp. 307, 308–09 (W.D.Wash.1987), *affirmed,* 896 F.2d 1227 (9th Cir.1990).

Even if defendants had satisfied the threshold standard for a motion to reconsider, the Court would have to be convinced that it did not make a clear error of law. The Court thus will analyze both of these motions under the summary judgment standard in order to determine whether the prior ruling was correct.

## A. Summary Judgment Standard

Rule 56, which governs motions for summary judgment, states that summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(e). The Court has the authority to grant summary judgment on specific issues and need not adjudicate all of the claims in the case. *See* Fed.R.Civ.P. 56(b) (motion by defending party).

In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986)) (emphasis in original).

■ When judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991). The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## B. Analysis

Wages are generally defined as "compensation allowed to seamen for their services to the vessel, and they include not only base wages specified in the shipping articles, but also overtime, extra wages, and bonuses." 1 M. Norris, *The Law of Seamen,* § 12:1, at 426 (4th Ed.1985), *quoted in Petersen v. Interocean Ships, Inc.,* 823 F.2d 334, 336 (9th Cir.1987). Not all forms of compensation given to seamen are considered to be "wages" within the meaning of Section 10313, however, as that statute exists only to remedy abuses relating to the payment of seamen for the services they rendered to a shipowner while onboard the ship. *Petersen,* 823 F.2d at 336.

■ The Ninth Circuit has applied a two-part test to determine whether a specific item of compensation given to a seaman constitutes wages within the meaning of Section 10313. First, the compensation must be given for services directly rendered to the ship. Second, the scheme of compensation must be one that "permit practices that the seamen's wage statutes were intended to prevent." *Petersen,* 823 F.2d at 336. "In making this determination, the wage statutes are to be liberally construed to maximize protection of seamen." *Id.* at 336 (citing *Arguelles v. U.S. Bulk Carriers, Inc.,* 408 F.2d 1065, 1070 (4th Cir.1969), *affirmed,* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971)).

■ The Court finds that the paid vacation payments constituted "wages" within the meaning of Section 10313. First, these payments were part of the compensation given to plaintiffs for their work on the ship. The section of the collective bargaining agreement setting forth vacation payments states that "the crewmembers shall be entitled to six (6) days vacation leave with pay ... for every month of service...." *See* CBA, art. IX, § 1 (attached as exhibit H to Second Wenkter Declara-

tion). This provision makes clear that the amount of benefits awarded to plaintiffs was directly related to the amount of time spent aboard the ship.

Second, these payments could be manipulated by defendants to injure plaintiffs. As defendants have not had the most admirable record in their treatment of plaintiffs (i.e., their admitted double-booking practices), the Court finds that vacation payments dependent on time worked onboard defendants' vessels could be manipulated to injure plaintiffs. Accordingly, defendants' motion is DENIED as it relates to vacation pay.

Per diem payments are different, however. The per diem section of the collective bargaining agreement states that plaintiffs were entitled to "per diem at the rate of U.S. $7.00 per day for licensed crewmember and U.S. $3.00 for non-licensed crewmember" for time spent travelling to and from ports for work onboard defendants' ships. *See* Plaintiffs' Opposition to Motion for Summary Adjudication, at 9. These payments are not made in consideration of plaintiffs' service on defendants' ships; they are payments of expenses for seamen on their way to meet the ship to begin work. As such, they are not "wages" within the meaning of Section 10313, and the Court GRANTS defendants' motion for summary adjudication on this issue.

## III. MOTION TO CERTIFY INTERLOCUTORY APPEAL

The third motion before the Court is one filed by plaintiffs which seeks certification of an interlocutory appeal. This proposed appeal would concern plaintiffs' claim for half wages under Section 10313(e). Defendants' motion for summary adjudication of this claim was denied by the Court in its August 13, 1991 order. However, in an order filed on November 19, 1991, the Court reconsidered its ruling and held that plaintiffs' execution of monthly pay receipts was not a demand under Section 10313(e), granting the defendants' summary judgment motion as to all of plaintiffs' claims under Section 10313(e).

On November 26, 1991, plaintiffs filed a notice of appeal to the Ninth Circuit from the Court's November 19, 1991 order. On the same day, plaintiffs filed their motion for certification of interlocutory appeal on the Section 10313(e) claims and requested a stay of these proceedings.

### A. Legal Standard for Certification of Interlocutory Appeal

■ The general rule is that an appellate court should not review a district court ruling until after entry of a final judgment. *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 474, 98 S.Ct. 2454, 2460, 57 L.Ed.2d 351 (1978); *In re Cement Antitrust Litig.,* 673 F.2d 1020, 1026 (9th Cir.1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.,* 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983); *Fukuda v. County of Los Angeles,* 630 F.Supp. 228, 229 (C.D.Cal.1986); *see* 28 U.S.C. § 1291.

The Interlocutory Appeals Act of 1958 creates an exception to the general rule. The statute states that:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon ... permit an appeal ... if application is made to it within ten days.....

28 U.S.C. § 1292(b) [hereinafter Section 1292(b)]. This statute exists for those exceptional circumstances where considerations of judicial economy and fairness demand interlocutory review of an order. The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances. *Coopers & Lybrand,* 437 U.S. at 474–75, 98 S.Ct. at 2460–61; *Fukuda,* 630 F.Supp. at 229.

■ Section 1292(b) identifies three factors that must be present in order for the Court to certify an appeal. First, the issue

to be certified must involve a controlling issue of law. The Ninth Circuit has ruled that an issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (citing *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir.1966)); *see Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1347–48 (9th Cir.1988).

Second, there must be substantial ground for difference of opinion on the issue. A party's strong disagreement with the Court's ruling is not sufficient for there to be a "substantial ground for difference"; the proponent of an appeal must make some greater showing. *Kern–Tulare Water Dist. v. Bakersfield*, 634 F.Supp. 656, 667 (E.D.Cal.1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir.1987), *cert. denied*, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).

Third, an interlocutory appeal must be likely to materially speed the termination of the litigation. This factor is linked to whether an issue of law is "controlling" in that the Court should consider the effect of a reversal by the Ninth Circuit on the management of the case. In addition, in light of the legislative policy that the statute only be used in exceptional circumstances, the Court should consider whether litigation in reliance on its order permitting an interlocutory appeal would be "protracted and expensive." *In re Cement Antitrust Litig.*, 673 F.2d at 1026; *see* 16 Charles Wright & Arthur Miller, *Federal Practice and Procedure*, § 3930, at 163–66 (1977). If an interlocutory appeal would actually delay the conclusion of the litigation, the Court should not certify the appeal. *See Shurance*, 839 F.2d at 1348 (refusing to hear certified appeal in part because decision of Ninth Circuit might come after scheduled trial date).

### B. Analysis

Analyzing plaintiffs' motion according to the requirements of Section 1292(b), the Court finds that plaintiffs have failed to demonstrate an exceptional need for an interlocutory appeal of their claims under Section 10313(e). The first factor to consider is whether the Court's decision to dismiss the Section 10313(e) claims involves a controlling issue of law. Plaintiffs argue that the "demand" issue is controlling because the Court's ruling deprived the plaintiffs of a substantial portion of the damages they seek to recover. Plaintiffs' Memorandum in Support of Motion for Stay and for Certification of Interlocutory Appeal, at 2 [hereinafter Plaintiffs' Appeal Memorandum]. While it is true that the potential scope of plaintiffs' damage claim has been affected, the Court's November 19, 1991 order disposes of only one claim, not the entire suit. As the resolution of the Section 10313(e) issue on appeal would have some impact on the case but would not be dispositive, the proposed appeal does not concern a controlling issue of law.

Regarding the second factor, there is substantial ground for difference of opinion as to what constitutes a demand under Section 10313(e). The Ninth Circuit has ruled that a seaman must make an "effective" demand to trigger the protection of Section 10313(e). *Larkins v. Hudson Waterways Corp.*, 640 F.2d 997, 999–1000 (9th Cir.1981) (considering 46 U.S.C. § 597, which was the predecessor statute to Section 10313). The Ninth Circuit has not, however, specified what makes a demand effective.

Plaintiffs argue that their position on half-wage claims is buttressed by two cases. First, they maintain that the *Larkins* court implied that submitting a written voucher would be an effective demand. Plaintiffs' Appeal Memorandum, at 5–6. The Court finds that interpretation of *Larkins* to be questionable because *Larkins* was not a double-booking case. In *Larkins*, the plaintiff failed to submit a pay voucher, thus the shipping company arguably did not pay the plaintiff because it did not know how much it owed him or that he had made a demand for wages. The plaintiffs in this case, on the other hand, signed pay receipts that both sides recognized were fraudulent. As the pay receipts were fraudulent, they were insufficient by themselves to alert defendants that an actual demand was being made. Thus, although

*Larkins* could support plaintiffs' position, the Court finds that it does not.

Plaintiffs next rely on a case from the Western District of Washington, *Raby v. M/V Pine Forest,* 1990 A.M.C. 2441 (W.D.Wash.), *rev'd in part,* 918 F.2d 80 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2015, 114 L.Ed.2d 101 (1991). *Raby* is factually similar to this case in that a group of Filipino seamen were subjected to double-booking practices. The *Raby* court held that the seamen's execution of the shipping articles and their signing of the monthly wage receipts constituted a demand under Section 10313(e). The *Raby* holding is in direct conflict with the holding of this Court in its November 19, 1991 order. The only distinguishing factor is that at least one of the signings in *Raby* took place in U.S. waters. In *Mateo,* none of the signings took place in U.S. waters. However, the *Raby* court indicated that mere possession of the signed pay receipts in U.S. waters constituted a demand for wages. *Id.* (Findings of Fact Nos. 14, 15).

On October 29, 1990, the Ninth Circuit reversed *Raby* in part and remanded the case, finding that the trial judge abused his discretion in setting the supersedeas bond. *See Raby,* 918 F.2d at 81. The Court of Appeals noted that "nothing in this opinion is intended to suggest that all or any portion of the penalty wages, or back wages, should have been assessed against the defendants." [2] *Id.* at 81 n. 1. Although the Court disagrees with the ruling made in *Raby,* because of the factual similarities between the cases, the Court finds that there is substantial ground for difference of opinion.

The third factor to consider is whether an interlocutory appeal would speed the termination of the litigation. If the Court certified the interlocutory appeal and stayed the proceedings, the trial would be delayed for months while the Court waited for a ruling. Even if the Ninth Circuit ruled in favor of the plaintiffs, this matter would still have to be tried in a substantially similar fashion. If the Court certified the interlocutory appeal and did not stay

the proceedings, there is a possibility that the Ninth Circuit would not decide the appeal until after trial is set to begin, which would also delay the termination of this case. Neither of these options would be practical.

Overall, plaintiffs have failed to meet their burden of demonstrating exceptional circumstances warranting interlocutory review of the Court's November 19, 1991 order. While there is substantial ground for difference of opinion based on the contrary *Raby* holding, the Section 10313(e) issue is not a controlling issue, and certification of an appeal will not materially advance the termination of this litigation. Accordingly, the motion for certification of an interlocutory appeal is DENIED.

### C. Motion to Stay Proceedings

Plaintiffs also request that the proceedings be stayed whether or not the interlocutory appeal is certified. Plaintiffs do not argue for a discovery stay, but only for a stay of the pleadings until the Ninth Circuit decides *Raby.* There is no merit to this request; if *Raby* is decided, it's dictates may be incorporated into this litigation. Accordingly, the motion to stay is DENIED.

### IV. CONCLUSION

For the reasons set forth above, the Court makes the following rulings:

1. The motion to quash service of process brought by defendants Universal Sea Transport, S.A., Vesta Co., Ltd., Nippon Yusen Kaisha Shipping Management Co., and Orion Shipping Co. is GRANTED.

2. Defendants' motion for summary adjudication of the vacation pay issue is DENIED.

3. Defendants' motion for summary adjudication of the per diem payments issue is GRANTED.

4. Plaintiffs' motion for certification of an interlocutory appeal from this Court's November 19, 1991 order dismissing plaintiffs' Section 10313(e) claims is DENIED.

---

**2.** *Raby* is still on appeal to the Ninth Circuit but has not been scheduled for hearing.

**802**

5. Plaintiffs' motion to stay the proceedings is DENIED.

6. The hearing scheduled for February 19, 1992 on defendants' motion is vacated. Defendants' counsel stated at the January 29, 1992 hearing that he is preparing a comprehensive motion. Defendants are ordered to consolidate the February 19 motion, the comprehensive motion, and any other motions, all of which will be heard at a later date in a single hearing. Defendants must notice these motions in accordance with the local rules.

IT IS SO ORDERED.