**CHEMEHUEVI INDIAN TRIBE, et al., Plaintiffs,**

v.

**Pete WILSON, in his official capacity as the Governor of the State of California; and the State of California, Defendants.**

**UNITED STATES of America, et al., Real Parties in Interest.**

**No. C97–1478 TEH.**

United States District Court, N.D. California.

April 29, 1998.

Lester J. Marston, David J. Rapport, Scott Johnson, Rapport & Marston, Ukiah, CA, Bradley G. Downes, Office of Tribal Atty., Hoopa, CA, Thomas P. Schlosser, Morisset, Schlosser, Ayer & Jozwiak, Seattle, WA, for Chemehuevi Indian Tribe, Coyota Valley Bank of Pomo Indians and Elk Valley Rancheria.

Kenneth R. Williams, Sara J. Drake, Atty. General's Office, Daniel E. Lungren, California Atty. General, Manuel . Medeiros, California State Atty. General's Office, Sacramento, CA, for Pete Wilson and State of California.

Patrick R. Bupara, Asst. U.S. Atty., Charles M. O'Connor, U.S. Attys. Office, San Francisco, CA, for U.S., U.S. Dept. of Justice, Janet Reno and Michael Yamaguchi.

## ORDER DISMISSING STATE DEFENDANTS

HENDERSON, District Judge.

The state defendants in the above-captioned matter filed a motion to dismiss for lack of venue, which is scheduled to be argued on May 11, 1998. On March 25, 1998, the Court ordered the parties to file supplemental briefs addressing four specific issues, including whether the state defendants should be dismissed from this case under Federal Rule of Civil Procedure 4(m). On April 17, 1998, plaintiffs filed their supplemental brief, arguing that service upon the state defendants was proper under Rule 4(m). On April 22, 1998, plaintiffs filed their supplemental response, which did not address the service issue at all.

Rule 4(m) is clear that, absent good cause shown, dismissal is appropriate if service is not made upon a defendant within 120 days after the filing of the complaint. In the instant case, plaintiffs filed their complaint on April 24, 1997, but they did not serve the state defendants until January 12, 1998—approximately 263 later. In their supplemental brief, plaintiffs assert that Magistrate Judge Zimmerman, who presided over this matter until recently, granted plaintiffs' motion for relief from the requirements of Rule 4(m) during an August 11, 1997 telephone status conference. According to plaintiffs, Judge Zimmerman extended the time for serving the state defendants until after he resolved plaintiffs' motion for summary adjudication against the federal parties.

The Court has obtained and carefully reviewed a tape recording of the August 11, 1997 telephone conference from Judge Zimmerman, *see* Recording No. TC97–12 (on file with Judge Zimmerman), and the Court concludes that plaintiffs' characterization of that colloquy is disingenuous. Judge Zimmerman most certainly did not "grant[ ] Mr. Marston's motion." Plaintiffs' Supplemental Brief at 9. Rather, Judge Zimmerman indicated that plaintiffs had three procedural options: (1) to file an entirely new lawsuit against the federal parties only and "wait to bring [Governor] Wilson in"; (2) to amend the existing complaint to eliminate the claim against the state defendants, in which case it would be up to the federal parties to decide "how, when, and where" to sue the state; or (3) to serve the state defendants immediately. After Judge Zimmerman explained the parties' options, plaintiffs' counsel indicated that he would prefer to wait to serve the state defendants until after the resolution of plaintiffs' summary adjudication motion. However, Judge Zimmerman never responded to this passing comment. To the contrary, he simply proceeded to set a hearing date and briefing schedule for plaintiffs' motion for summary adjudication against the

federal parties. Judge Zimmerman never "ordered" that plaintiffs could refrain from serving the state defendants.[1]

 Thus, the Court concludes that plaintiffs service of the state defendants was not in conformance with the 120 day limit imposed by Rule 4(m).[2] Furthermore, the Court hereby finds that plaintiffs have not and cannot demonstrate "good cause" for their failure timely to serve the state defendants. To be sure, plaintiffs' expressed willingness to keep the state defendants in the dark in order to preclude them from opposing plaintiffs' request for relief against the federal parties is not good cause. There is no doubt that the "good cause" proviso of Rule 4(m) was not intended to allow a plaintiff to keep certain defendants from participating in litigation for the sole purpose of preventing them from weighing in on issues that affect them. To the contrary, good cause generally means "that service has been attempted but not completed, that plaintiff was confused about the requirements of service, or that plaintiff was prevented from serving defendants by factors beyond his control." *See Mateo v. M/S KISO*, 805 F.Supp. 792, 795 (N.D.Cal.1992). Plaintiffs have not and cannot come close to meeting this standard.

Because Judge Zimmerman did not authorize any extension of time for service under Rule 4(m), and because plaintiffs have not and cannot show good cause for failing to comply with Rule 4(m), the Court hereby ORDERS that defendants Wilson and the State of California are DISMISSED WITHOUT PREJUDICE. Their motion to dismiss for lack of venue is DENIED AS MOOT, and the May 11, 1998 hearing date is VACATED.

The Court acknowledges the federal parties' argument that, even if Judge Zimmerman did not authorize an extension of time in which to serve the state defendants, judicial economy will be served if the Court exercises its discretion not to dismiss the state defendants under Rule 4(m). The federal parties suggest that dismissal under Rule 4(m) will only bring this case full circle at some point in the future, because plaintiffs can either file a new action against the state defendants and move to consolidate, or amend the existing complaint to re-name the state defendants and serve them in compliance with Rule 4(m). *See* Federal Parties' Supplemental Br. at 8. However, these scenarios presuppose that the Court would grant a motion to consolidate a new action or leave to amend the existing complaint. Although these issues are not currently ripe for consideration, the Court notes its skepticism that either consolidation or amendment would be appropriate, because plaintiffs' claims against the federal parties are really quite distinct from their claims against the state defendants. Indeed, succeeding against the federal parties would seem to mean that plaintiffs would abandon their claims against the state defendants, since the federal parties would at that point be prosecuting those very claims on plaintiffs' behalf. Thus, the Court believes that judicial economy would best be served by keeping these cases separate and proceeding to a prompt and final resolution of plaintiffs' claims against the federal parties. Once those claims are resolved with finality, everyone involved will know whether the federal parties are going to file suit against the state on plaintiffs' behalf, or whether it will be up to plaintiffs to sue on their own behalf. In light of Judge Zimmerman's informal comments at the August 11, 1997 status conference, the Court speculates that he would agree.

---

1. Plaintiffs' counsel, Lester Marston, filed an affidavit with the Court in which he swears that he argued to Judge Zimmerman at the August 11 status conference "that it would be prejudicial to the Tribes to require them to serve the State at [that] stage in the case, since the State would inevitably join with the federal defendants to oppose the Tribes request for relief," and that Judge Zimmerman "agreed." However, the tape recording of the status conference proves conclusively that he made no such argument to Judge

Zimmerman, much less that Judge Zimmerman agreed. Mr. Marston must have a poor memory, because the Court seriously doubts that he would have deliberately perjured himself in his affidavit.

2. It is worth noting that at the time of the August 11, 1997 status conference, plaintiffs still had more than a week in which to serve the state defendants in compliance with Rule 4(m).

Turning to the question of how to proceed from here, the Court concludes that the best course of action would be to return this matter to Judge Zimmerman for final resolution of plaintiffs' claims against the federal parties. He is intimately familiar with those issues and is best suited to resolve plaintiffs' remaining claims. The plaintiffs and federal parties have already consented to his jurisdiction, and the only parties who objected—the state defendants—have been dismissed. Accordingly, the Court hereby refers this matter back to Judge Zimmerman for further proceedings pursuant to 28 U.S.C. § 636(c)(1). Once Judge Zimmerman resolves plaintiffs' remaining claims, any aggrieved party will have the opportunity to appeal directly to the Court of Appeals. *See* 28 U.S.C. § 636(c)(3).

**IT IS SO ORDERED.**